## ESTATE OF JACOB GOLD, DECEASED.

APPEAL BY REUBEN MESSINGER FROM THE ORPHANS' COURT OF NORTHAMPTON COUNTY.

Argued March 12, 1890—Decided March 24, 1890.
[To be reported.]

(*a*) A testator's personal estate consisted of two lots of ground, household goods, farm implements and live stock, farm crops, a note on which a balance of $750 was due from the executor, and the note of another person for $150. His will gave to his wife all property remaining after payment of debts, " to have, hold, use, possess and enjoy the same during her lifetime," and directed that after her death " all the remaining property, of whatever kind," be sold and divided amongst his children :

1. The testator's wife was the first object of his bounty ; he intended she should consume so much of the personal property, including the two notes, as might be necessary for her support during her lifetime, and that only what was left should go to the children ; wherefore, the executor, having paid to the widow, for her use in the way of maintenance, the amount of the note the testator held against him, was entitled to credit therefor in his account : Markley's Est., 132 Pa. 352, followed ; Hofius v. Hofius, 92 Pa. 305, distinguished.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 317 January Term 1890, Sup. Ct. ; court below, number and term not given.

Statement of Facts.

On March 6, 1889, a final account of Reuben Messinger, executor of the will of Jacob Gold, deceased, exhibiting a balance in the hands of the accountants, was presented in the court below and confirmed nisi, and thereupon the court appointed *Mr. A. B. Longaker*, auditor, to make distribution of said balance. Subsequently, the order appointing the auditor was amended so as to authorize him to examine and re-state the account, if necessary.

At the audit, the residuary legatees under the will asked that the accountant be surcharged with the amount of a note which the testator held against the executor at the time of his death. The auditor reported, finding the following facts:

Jacob Gold died October 29, 1878, testate, leaving his will dated July 4, 1878, which was probated February 11, 1880, and letters testamentary were issued to Reuben Messinger, the accountant. The testator died seised of two tracts of land, one the homestead, containing about 6½ acres of cultivated land, and the other containing about 12 acres mostly improved land. The personal estate consisted of household goods, farm implements and live stock, one mare, cow, pigs, chickens and farm crops, and a promissory note of $860, dated April 1, 1877, of Reuben Messinger to the decedent, payable one year after date with legal interest, and there is indorsed on said note the payment of $110 principal, and one year's interest, $51.60; and also a note of Peter Gold, dated April 1, 1878, for $150. The decedent owed a book account of $5.86 to Reuben Messinger, and the principal sum of $55.55 due and payable after the death of the widow, and a like sum of $55.55 to Edward Messinger, and a note of $150, under seal, dated October 18, 1861, payable six months after his death to Peter Gold.

His will contained the following provisions:

" As to such worldly estate wherewith it has pleased God to bless me, I dispose of the same in the following manner. In the first place, it is my will that all my just debts and funeral expenses are duly paid and satisfied as soon as conveniently can be after my decease.

" Item. I give and bequeath unto my dear wife Abigail all and whatsoever is remaining of my property of whatever kind or nature the same may be after my decease, to have, hold, use, possess and enjoy the same during her lifetime. And further,

it is my will and I do order after my wife's death that all the remaining property of whatever kind shall be sold and divided amongst my five children in equal parts or shares, viz.: . . ."

Abigail, the widow, died April 7, 1887; and on May 30, 1887, the personal property, farm stock, implements, etc., and household goods were sold at public vendue, producing the sum of $211.92; some time subsequently the grain and other farm produce were sold for $104.63. The homestead was sold at public vendue December 26, 1887, for $1,185, and the other tract, the 12 acres, remained unsold, but was twice offered at vendue. At the first vendue it was bid to $1,105, and at the second vendue, $1,115; it was afterwards sold, August 11, 1888, at private sale, for $1,100 to Jacob S. Hartzell, deducting therefrom a dower sum of $450, and a dower interest of one year, $27, making the net proceeds $623.

The Messinger note, after the death of Jacob Gold, and the note of Peter Gold, were held by the widow until her death, and after her death, upon the day of the appraisement, the accountant received and held his own note, and produced it upon call before the auditor. At the date of the testator's death there remained unpaid, of the Messinger note, principal to the amount of $750, with interest thereon from April 1, 1878. The accountant, after the death of Jacob Gold, and prior to the death of his widow, paid to her, or to others for her, in cash and by merchandise furnished, a sum amounting to $874.44, which he claims should be allowed as a credit upon the note.

Upon the facts so found, the auditor reported his opinion in part as follows:

The legatees contend that the widow took a life-estate, only, in the personalty and realty; that she had no right to absorb the principal sum of the note, and that by its use and enjoyment she was given no more than its interest. The chief contention of the accountant's attorneys is, that there should not be a surcharge of the $750, the balance of the principal of the note, because in the first clause of the will it is bequeathed to the widow, falling within the denomination of "all and whatever is remaining of my property of whatever kind and nature the same may be," and, as there is no gift over of it, for the

Auditor's Report.

reason that whatever is disposed of in the residuary clause, is only such personal property as is usually the subject of sale.

That a bequest for life, without a gift over, is absolute in the first taker, is so well settled as to require no citations of adjudicated cases. But, the lion in the path seems to be that canon of interpretation, which subjects the former clause of a will to the latter.

The two clauses for consideration are as follows : (after payment of funeral expenses and debts) "I give and bequeath to my wife Abigail all and whatever is remaining of my property of whatever kind and nature the same may be . . . . . to have, hold, use, possess, and enjoy the same during her lifetime." After the death of his wife, "all the remaining property of whatever kind shall be sold and divided amongst my five children in equal shares." The former clause, as regards the realty, creates, as distinctly as language can .do, an estate for life, and presumably, if not explicitly, a life-estate only as regards the personalty. It is presumably a life-estate, at least, as to personalty ; because, where the realty and personalty are blended in one gift, they will both take the same direction, the personalty following the real estate, unless some clearly expressed intention gives it a different direction : Morrison v. Semple, 6 Binn. 98. And in Drennan's App., 118 Pa. 176, it is said : "A devise of real estate.for life, blended with the personalty, creates the presumption of a gift for life only in the personalty : " Steele v. Thompson, 14 S. & R. 101 ; Johnson v. Morton, 10 Pa. 249. The former clause, after the payment of funeral expenses and the debts, clearly gives to the widow for life all the remaining property of whatever kind, including the realty and personalty of every description, by reason of the generality of the expression sufficiently comprehensive to include the note, and the latter or residuary clause is equally as comprehensive.

But it is argued that the note is not included in the residuary gift, because all that passes under it is only such personalty as is usually the subject of sale, and there being no gift over of it, the bequest is absolute in the first taker. The rule which militates against this construction of the former of these clauses is, that, where there is a conflict, the latter clause prevails ; and it would seem to follow, if the note does not pass

by the latter and is excluded from it, the former clause must be so construed as to exclude it also, and in that event an intestacy results in relation to the note. . . . . .

—After citing German v. German, 27 Pa. 116, Hunter's Est., 6 Pa. 99; McGlaughlin v. McGlaughlin, 24 Pa. 22, and Bredlinger's App., 2 Gr. 461, to show that a testamentary provision for the sale of personal property and a division of the proceeds among legatees, embraces only such property as is usually sold by executors for such purposes, and does not include promissory notes and debts due to the testator, the auditor continued:

The rulings made in these last four citations seem to have been made to give effect to what has been declared to be the intent of the testator. Looking again at the last two clauses of Jacob Gold's will, it will be observed that by the first clause, after the payment of funeral expenses and debts, whatever is remaining of testator's property, of every kind and nature it may be, is bequeathed to his wife during her lifetime, and by the latter clause, " all the remaining property of whatever kind shall be sold and divided amongst my five children share and share alike." These clauses are descriptive of the same species of property. If the one contains real and personal property, including in the personalty household goods, farm implements, live stock, debts due and a promissory note, the other contains the like species of personal effects. The expression in the former clause, " whatever is remaining of my property of whatever kind and nature," and the expression in the latter clause " all the remaining property whatever " are the equivalents of each other. In the former, it is given to the widow for life, to have, hold, use, possess and enjoy; and by the latter, it is to be sold and the proceeds divided amongst the five children. If the expressions " whatsoever is remaining of my property of whatever kind and nature " and " all the remaining property whatever," are equivalents, and descriptive of the same real and personal property, then the whole quantity of the estate given to the widow for life, less the consumption of that which is consumable by use, is a bequest over and must be accounted for as part of the residuary estate to be distributed after her death.

Considering the abstract language of these two clauses,

without any reference to the context, or to other parts of the will, and adopting technically the rule of construction as pronounced in German v. German and its congeners, it would seem to follow that an intestacy occurs as to the Messinger note.  But, looking, however, to other modes of interpretation, and regarding the doctrine that no presumption can be made in favor of intestacy, that in a blending of the realty and personalty both take the same direction, the personalty following the realty, and, considering the circumstances of the testator, the quantum and value of his estate, the amount necessary for the comfortable support of his widow, and the general intent manifested and as gathered from the four corners of the will, all seem to lead to the conclusion that the primary object of testator's bounty is his wife, and the clear intent as expressed is a bequest of the whole estate to her for life.  To declare an intestacy as to the note would seem to be a perversion of the manifest intent, and to hold that the widow takes absolutely the note would be a plain disregard of the law as declared in Board of Missions' App., 91 Pa. 510.  This citation is on all fours with Gold's will, and in its general features so like it, that the surprise is great to find two cases so similar, and the ruling made in one cannot fail to demand a like ruling in the other. . . . . Following Board of Missions' Appeal is Hofius v. Hofius, 92 Pa. 308. . . . . In the case in hand, the Messinger note, by operation of law became actual cash in the hands of the accountant as soon as he accepted letters testamentary, and after Mrs. Gold's death it was ready for division as cash amongst the residuary legatees.

In accordance with these views, the accountant is surcharged with the proceeds of the note, the amount of which is the principal remaining unpaid, $750, with interest from April 1, 1878, up to October 28, 1878, the date of the death of the widow.

—The auditor thereupon re-stated the account in accordance with his opinion, and reported a schedule of distribution of the balance found to be in the accountant's hands.  Exceptions to the report, after argument, were dismissed by the court, SCHUYLER, P. J., and the report confirmed, without opinion filed.  Thereupon the accountant took this appeal, assigning for error, inter alia:

1. The decree confirming the auditor's report.

Arguments.

*Mr. O. H. Meyers*, for the appellant:

In the construction of a will the primary question is as to what intention is manifested by the words used: Hancock's App., 112 Pa. 532. The words are to be read usually in their ordinary and grammatical sense: McKeehan v. Wilson, 53 Pa. 74; Abbott v. Middleton, 7 H. L. 68. Their popular meaning is the best criterion of the testator's intention: Hunter's Est., 6 Pa. 97. The value of the property devised, the circumstances and surroundings of the testator, his character and the amount and character of his property can be considered, in arriving at his intention: Marshall's App., 2 Pa. 388; Postlethwaite's App., 68 Pa. 477; Earp's Will, 1 Pars. 453; Rewalt v. Ulrich, 23 Pa. 388. Further; the first taker is presumed to be the favorite of the testator and the preferred object of his bounty: McFarland's App., 37 Pa. 300; Wilson v. McKeehan, 53 Pa. 79. Tested by these rules of construction, we contend that this will entitles the widow to the proceeds of the note in question.

1. The first and principal object of the testator's bounty was his wife. He intended to provide for her a decent support out of his estate. With her uppermost in his thought, he gives her all his property for her life, in language as comprehensive as it could be made, amplifying the statement of the purpose for which it is given to her and the control she is to have over it, by the use of a number of words each of a different meaning or shade of meaning, which, considered simply and collectively, expressed his intention with a significance that cannot be misunderstood. These words, " to have, hold, use, possess and enjoy," in so far as they authorize the consumption of personalty, are not limited to such articles as pork, flour etc., but extend to every possible mode of having, holding, using, possessing and enjoying the bequest which the words signify. Under these words there is no distinction between the kinds of property just mentioned, and notes, book accounts or money: Hambright's App., 2 Gr. 320. Especially is this so, in view of the smallness of the amount involved.

2. By the clause providing for the sale, after his wife's death, of " all the remaining property," what did the testator mean ? Clearly not the same remaining property that was bequeathed to the widow, i. e., that remaining after the payment of debts ;

but such part of the personal property as should not have died, been worn out, or consumed. As the right of consumption is not limited, but includes the note in question, the words, "remaining property," can mean no more than such only, inclusive of the note, as in fact remains. But the words of the clause in question expressly eliminate the note, the language being that the remaining property is to be sold and divided. Such language has no application to a note, and therefore the note would not pass under it to the children : Hunter's Est., 6 Pa. 97; Bredlinger's App., 2 Gr. 461; McGlaughlin v. McGlaughlin, 24 Pa. 20; Myers's App., 48 Pa. 26. In German v. German, 27 Pa. 116, this principle was so applied as to limit the right of the wife as to the kind of property she might take, but the distinction between that case and ours is, that in the latter the wife is expressly given all the property. ˊ

3. Neither Board of Missions' App., 91 Pa. 507, nor Hofius v. Hofius, 92 Pa. 305, is adverse to our position. Each was decided upon the ground that the bequest was residuary, and that the testator expressed an intention not to die intestate. In our case, there is no residuary bequest in the proper acceptation of the term. Construing together the two clauses to which we have referred, we submit that the testator deliberately limited the property which his children were to have the benefit of after the widow's death, to such as was the subject · of sale, so as to express his intention that the note should be excluded. There is no question of intestacy in this case. And even though the widow was given a life-estate merely in the note, as there is no bequest of it over, the note vested in her absolutely by construction and operation of law. Nor does the blending of realty and personalty in the bequest for life interfere with this view, as the intent of the testator must be gathered from the whole will. Under the decisions at the time of the testator's death, the executor's counsel was justified in advising him that the widow owned the note. A surcharge of it now would be a great injustice.

*Mr. William C. Shipman* (with him *Mr. William Fackenthall*), for the appellees :

1. On his own showing, the executor has no standing. He contends that the note was bequeathed to the widow. If so, it

passed to her personal representatives on her death, for the benefit of her creditors. The accountant is attempting, therefore, to set off claims that are not mutual, nor due in the same right. Even in the lifetime of the widow he could not do this, as against another of her creditors: Lorenz v. King, 38 Pa. 93. Much less can he do so after her death, when the rights of all parties have become fixed and vested.

2. The bequest to the widow, standing alone, cannot be considered as anything else than a life-estate. The argument that she might consume the personal property, and if so, she could sell it, and if she could sell it, she owned it, is a species of reasoning that would destroy all life-estates in personal property. The rule that there can be no life-estate in things consumable by nature, such as a bag of flour, does not extend to choses in action, such as notes and money. Moreover, there is a bequest of the note over to the children. The words "remaining property" embrace the same things here that they do in the bequest to the widow.

3. The proposition that the word, "sold," cannot apply to a note, is not supported by any decision of this court. The very question was decided the other way in Board of Missions' App., 91 Pa. 507. The cases cited by the appellant do not sustain his contention; and when it is remembered that the meaning of the testator is to be gathered from the whole will, it will be found that they are all in harmony with Board of Missions' App., supra. McGlaughlin v. McGlaughlin, 24 Pa. 20, is so clearly against the appellant, that it is a wonder he cited it.

OPINION, Mr. CHIEF JUSTICE PAXSON :

This case is upon all fours, both as to its law and its facts, with Markley's Est., 132 Pa. 352, decided at this term, where we held that the widow had the right to use so much of the personal estate as was necessary for her comfort and support, and that it was only the residue that was to go to the testator's children after her death.

In the case in hand, the personal estate consisted of household goods, farm implements and live-stock, pigs, chickens and farm crops, a note of $860, and one of $150, with some credits indorsed thereon.

The testator disposed of his estate as follows: "I give and

Opinion of the Court.

bequeath unto my dear wife Abigail all and whatsoever is remaining [after payment of debts] of my property of whatever kind or nature the same may be after my decease, to have, hold, use, possess, and enjoy the same during her lifetime. And, further, it is my will, and I do order after my wife's death that all the remaining property of whatever kind shall be sold and divided among my five children in equal parts," etc.

It is clear that the testator's wife was the first object of his bounty, and that he intended she should use so much of his personal property as might be necessary to her support during her lifetime. The language of the will is very emphatic. She is to "have, hold, use, possess, and enjoy the same during her lifetime," and it is only the remainder, that is, what is left thereof, that is to be sold and distributed among his children after his wife's death. There can be no possible doubt as to this construction, so far as regards the perishable property, such as household goods, farming implements, stock, and produce of the farm. Nor do we think there can be any doubt as to the two notes. They were intended for her support, if needed; what was left was to go to the children. We therefore think it was error to refuse to allow the accountant credit for the amount of the disbursements made by him to the widow, in discharge of the note held by the testator against the accountant. This view is not in conflict with Hofius v. Hofius, 92 Pa. 308. That case differs widely from this, and the distinction is so palpable that we need not stop to discuss it.

All of the assignments of error are sustained.

> The decree is reversed, at the costs of the appellees, and it is ordered that the record be remitted to the court below, with instructions to proceed to make distribution in accordance with this opinion.