144    259
e 23 SC 134,

# ESTATE OF JOHN HEPPENSTALL, DECEASED.

144    259
f 34 SC ¹118
f 34 SC ¹123

APPEALS BY E. HEPPENSTALL ET AL. FROM THE ORPHANS'
COURT OF YORK COUNTY.

Argued May 20, 1891—Decided October 5, 1891.

(*a*) A testator gave all his estate, real and personal, to his wife " during
her natural life, or so long as she remains my widow, to be applied by
her for her own proper use and for the maintenance and education of the
minor children ; " with power in his executors to sell and dispose of any
part of said property, if necessary, for that purpose.

(*b*) He provided, further, that, after the death or re-marriage of his said
wife, " all the then remaining part of my estate, real and personal, of
what kind or nature whatsoever, . . . . be sold and disposed of," and
the proceeds thereof divided among his ten children.   The widow was
one of the executors to whom letters testamentary issued:

1. In such case, the widow took the right of possession and use of the
testator's personal estate, as widow and legatee, and not as executrix:
Markley's Est., 132 Pa. 352 ; Gold's Est.,133 Pa. 495 ; and on her death,
the surviving executor was chargeable only with such personal estate
of the testator as was then remaining.

2. The widow was not confined to the income and interest of the estate
devised.   Nor, could she have been required to give security as a life-
tenant: Hambright's App., 2 Gr. 320.   And, without accountability to
any one, she had power to sell in her own way any part of the person-
alty she might think profitable and proper to sell : Per BITTENGER, J.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILL-
IAMS, McCOLLUM and MITCHELL, JJ.

No. 432 January Term 1891, Sup. Ct.; court below, number
and term not shown.

On February 1, 1888, William Heppenstall, surviving exec-
utor of the will of John Heppenstall, deceased, filed his ac-
count showing a balance for distribution of $4,926.76, being
almost entirely the proceeds of real estate sold.   Exceptions
having been filed to said account, *Mr. Richard E. Cochran* was
appointed auditor to hear and determine the same and to re-
port distribution.

It was found by the auditor that the accountant's decedent
died on October 5, 1854, leaving a will dated February 19,
1851, duly admitted to probate, in which, after directing the

payment of his debts and funeral expenses, he provided as follows:

" And, as touching all the rest, residue and remainder of my estate, real and personal, of what kind or nature whatsoever the same may be, in the county of York aforesaid, or elsewhere, I give and devise the same unto my dear wife, Sarah Heppenstall, during her natural life, or so long as she remains my widow, to be applied by her for her own proper use and for the maintenance and education of the minor children, should there be such; and, in case it should be necessary to sell and dispose of all or any part of said property, real or personal, for the support of my said wife and minor children, for that purpose I do hereby authorize and empower my executors hereinafter named and appointed and constituted, or the survivor of them, to sign, seal, execute and acknowledge all such deed or deeds of conveyance as may be requisite and necessary, for granting and assuring the same to the purchaser or purchasers thereof in fee-simple.

" Item. It is my will that immediately after the decease of my said wife Sarah, (or also in case of marriage), that all the then remaining part of my estate, real or personal, of what kind or nature whatsoever the same may be, in the county aforesaid or elsewhere, the same be sold and disposed of, to such person or persons, and for such price or prices as may reasonably be gotten for the same ; and for that purpose I do hereby authorize and empower my said executors, or the survivors of them, to execute all deeds of conveyance for granting and assuring the purchaser or purchasers as aforesaid; the proceeds thereof I give and devise to my ten children, Elizabeth, Sarah, Mary, William, John, Nancy, Martha, Caroline, Emanuel, James, and to their heirs and assigns forever, to be equally divided among them ;

" And lastly, I nominate, constitute and appoint my said wife executrix, and my two sons, William and John, my executors of this my last will, hereby revoking," etc.

Letters testamentary having been granted to Sarah Heppenstall, widow, and William Heppenstall, a son, an inventory and appraisement of the personal property of the testator was filed on November 7, 1854, amounting to $4,399.09. This inventory embraced household goods appraised at $403.98; horse,

Statement of Facts.

cow, canal boat, note, cash account, appraised at $2,411.91; and goods in the testator's store and warehouse, appraised at $1,583.09. The testator died seised of a lot of ground with a dwelling-house thereon, and also a vacant lot, both in the borough of Wrightsville. Ten children survived him, five of whom were minors. Sarah Heppenstall, the widow, received rents from the real estate, during her lifetime, amounting in all to $3,410.85; and paid taxes assessed on the real estate, to the amount of $1,582.12. Upon the vacant lot she erected a dwelling-house, begun in 1855. In March or April, 1856, she sold the stock of goods for $1,422.50, to Heppenstall & Gohn, of which firm William Heppenstall was a member. She died on April 25, 1885. After her death, the surviving executor sold the personal property remaining, which was of the testator's estate, and converted all the real estate into money. Other facts appear in the opinion of the court below.

Passing upon the exceptions to the account,—not set out in the paper-books,—and citing Cox v. Sims, 125 Pa. 522; Follweiler's App., 102 Pa. 581; Jauretche v. Proctor, 48 Pa. 471; Markley's Est., 132 Pa. 352; Gold's Est., 133 Pa. 495, the auditor ruled that, under the will, all the personal estate of the testator went to the widow during life or widowhood; that she was entitled to the possession of it as widow and legatee, and not as executrix; that during her life or widowhood she had absolute power over it; that in selling the store, she did so as widow, under the terms of the gift, and that by her sale to the firm of Heppenstall & Gohn, of which William Heppenstall, one of the executors, was a member, all claims of the estate and of her own were divested. Finding, therefore, that the surviving executor was chargeable only with such personalty as remained of the estate after the death of the widow, the auditor dismissed all the exceptions filed, and reported a distribution accordingly.

To this report, Emanuel Heppenstall and others, residuary legatees, filed exceptions alleging that the auditor erred, inter alia:

1. In his finding and conclusion of law, that, under the bequest of the testator to his widow, " all the personal estate of the testator went to his widow, during her life, as widow and legatee, and not as executrix; and that during her life or

Opinion of Court below.

widowhood, she had absolute power over it. . . . . That the widow's sale of the store-goods left by the testator, to the firm of Heppenstall & Gohn, divested said goods and property of all claims of the estate or of her own." [1]

2. In finding, as matter of law, that the surviving executor was chargeable only with such personal property or estate of his testator as remained after the death of the widow.[2]

3. In not surcharging the accountant with the appraised value of the goods in the store and warehouse, at the time of the testator's death, and with the profits of the store, accruing down to the time of the filing of the executor's account; and with the rents of the real estate, which were largely in excess of the sum found by the auditor; and with the value of the mules, canal boat, and the notes, mentioned in the inventory.[3]

Said exceptions having been argued, the court, BITTENGER, J., on March 2, 1891, filed the following opinion:

In the construction of this will, the circumstances of testator, at the time of the execution of the will, his business, the extent and character of his estate, and his family, are all matters to be considered. His real estate consisted of two lots of ground in the borough of Wrightsville, one of which, on Front street, near the rented store-house occupied by him, was unimproved. He had purchased it with a view to building a residence upon it, thereby making it valuable and productive. He was engaged in general merchandise, and so continued to the time of his death. He had also a horse, cow, canal boat, mules for the boating, etc.; also, household property. His whole personal estate was, after his death, appraised at $4,399.09, as found by the auditor. The dwelling-house of the testator rented at $150 per year, after it was vacated by the widow. The testator left to survive him, ten children, five of whom were minors, William, himself, being only twenty-two years of age.

The horse, cow, canal boat, mules and rig were such property as would constantly become of less value with continued use and wear, becoming finally, if retained unsold, completely worthless. The stock of goods in the store could only retain its value by the business being carried on by the widow or the executors, and by the constant addition of new goods to keep

Opinion of Court below.

up the stock, an uncertain and hazardous business. The testator did not intend the business of store-keeping and boating to be continued for his estate, or he would have provided for the same in his will. It would have been easy, and that it was not done demonstrates that such was not his intention. His wife, a careful, managing, economical, business woman, as clearly established by the evidence, was the first object of his bounty. She was to be left to struggle alone, after his death, with five minor children, (more when he made his will,) to support, educate and care for. He therefore provided the means of support in his will, by giving his wife the whole of his estate, real and personal, for life, with the right to manage and use the same to support herself and family out of the same. She was not confined to the income and interest, as that would have been inadequate. It was not such a support and maintenance as was intended for her and her children.

Neither was she required to give security as a life-tenant for the personal property, as is gravely contended by the counsel for the legatees in remainder. Had she been cited to give bond, the court would have said, in the language of Judge BLACK, in Hambright's App., 2 Gr. 320 : "What sort of a bond shall she give? What shall be its penalty and condition? He gave to them in remainder nothing, in case she left nothing. I repeat, she is to be the judge of her wants. The testator gave her the full use of the money. He trusted her; we must do the same."

Under the decisions of the Supreme Court, in the case of Straub's App., 1 Pa. 86; Cox v. Rogers, 77 Pa. 160; Cox v. Sims, 125 Pa. 522; Markley's Est., 132 Pa. 352; Gold's Est., 133 Pa. 495, and cases cited, there can be no question that Sarah Heppenstall had, under the will, the right to the possession and use of the personal estate bequeathed for the benefit and support of herself and family, after the payment of the testator's debts, without accountability to any one; that she had power and authority to sell any part of the same she might think profitable and proper to sell; that she had a right to sell the stock of store-goods, when, and in the manner she did; also the canal boat, the mules and rig. It is in evidence that her son John sold the latter, at her request, when it became apparent that the boating business was not profitable. The

property would necessarily, in time, grow of less or no value. The last mentioned sale realized $440.

Complaint is made that these sales were not made by the executors when required. The direction of the will to executors to sell, when a sale was required, did not apply to the personal property. This provision was for the sale of the real estate, when deeds were to be made and delivered to the purchaser, to make title to the same. These muniments of sale and title are not appropriate to the sale of personalty.

Fault is found that the widow built out of the moneys of the estate a house and stable on the Front-street lot, and that this was beyond her power. Evidently the will does not contemplate such action or investment of moneys by the executors or the widow, but she paid all the debts of the testator, supported herself and minor children, advanced to her children about $1,000, from time to time as they had use for it, and besides erected a house and stable on said Front-street lot, at an expense of $2,445.01, thereby making it valuable and productive. She erected these buildings, the evidence shows, because the act was contemplated by her husband, in his lifetime, and she piously perfected his plans and intentions. A most credible showing was made by the accountant of the items of cost of the work and materials for these buildings, the expenditures having been made by his mother. The improvements necessarily enhanced the value of the property to the extent of their cost. The fact that said property was sold, after the widow's death, for $2,415, at a time of great depression in real estate values, especially when it is remembered that it was rented for more than six per cent interest on $3,000, counting taxes and repairs, shows that it was a prudent and safe investment of part of the fund bequeathed to the children after the death of the widow, and is still available. It is included in the balance, now claimed by the legatees, in this distribution. This complaint about the management of their widowed mother, of her affairs, comes with bad grace from her children, or some of them, who are not content with recovering their shares out of the real estate she improved as above shown, but are striving to compel their brother, the surviving executor, to pay them again out of his own pocket by this effort to surcharge the accountant.

Opinion of the Court.

This bad faith on the part of the exceptants cannot be permitted, and their first, second and third exceptions are dismissed.

—The report of the auditor having been confirmed, and distribution ordered accordingly, the exceptants took this appeal, specifying that the court erred, inter alia:

1–3. In dismissing the exceptions filed.[1 to 3]

Mr. *Edward Champneys* (with him Mr. *N. M. Wanner*), for the appellants.

As to rules of construction, counsel cited: Reck's App., 78 Pa. 432; Fox's App., 99 Pa. 386; Middleswarth v. Blackmore, 74 Pa. 414; Kauffelt's Est., 1 Walk. 246; Suplee's App., 16 W. N. 378; Park's Est., 21 W. N. 227. As to the liability of a co-executor, where there is a misuse of funds or negligence: Weigand's App., 28 Pa. 473; Fesmire's Est., 134 Pa. 67; Irwin's App., 35 Pa. 294; Sterrett's App., 2 P. & W. 419; Pim v. Downing, 11 S. & R. 71; Wilson's App., 115 Pa. 101; Weldy's App., 102 Pa. 454. Upon the assignments of error: Reiff's App., 60 Pa. 361; Rodgers v. Rodgers, 7 W. 15; Clevenstine's App., 15 Pa. 495; King v. Diehl, 9 S. & R. 409; Hinkle's App., 116 Pa. 496.

Mr. *H. C. Niles* (with him Mr. *W. F. Bay Stewart* and Mr. *George E. Neff*), for the appellee.

Other than cases cited by the auditor and court below, counsel cited: German v. German, 27 Pa. 116; Hunter's Est., 6 Pa. 97; Sheetz's App., 82 Pa. 213; Doebler's App., 64 Pa. 9; 2 Wms. on Exrs., *933.

PER CURIAM:

We are of opinion that under the will of John Heppenstall, deceased, his widow took his personal estate absolutely, as widow and legatee, and not as executrix: Markley's Est., 132 Pa. 352; Gold's Est., 133 Pa. 495. This disposes of the first assignment. It follows that, in the account of the surviving executor of John Heppenstall, he is chargeable only with such personal property of his testator as remained after the death of his widow. This covers the second assignment, and those that remain do not

Statement of Facts.

require notice. The case was disposed of in an accurate and intelligent manner by the learned judge of the court below.

Decree affirmed, and the appeal dismissed at the costs of the appellants.