## Flannery's Estate

*Joseph A. Beck* and *Thomas W. Neely, Jr.,* for accountant.

*Roy Rose* and *William E. Boggs,* for Montour & Lake Erie Coal Co.

*Ralph D. McKee,* for First National Bank.

*Thomas W. Pomeroy, Jr.,* for Union Trust Co., guardian.

*I. Willits McCaskey,* for children of James J. Flannery, Jr., deceased.

*Shoemaker & Knoell,* for Borough of Oakmont.

*Byron J. Finn,* for County of Allegheny.

CHALFANT, J., December 10, 1941.—Two preliminary questions arise in this estate, which should be determined before the claims of creditors are adjudicated: First, is the account properly filed by the executors of the estate of Harriet Rogers Flannery, life tenant, designated as trustee; and, second, if so, is the estate subject to debts created by her, she having the power of consumption under the will of her husband, James J. Flannery, deceased.

James J. Flannery died March 6, 1920, and by his will bequeathed and devised his residuary estate to his widow, Harriet Rogers Flannery, in these words:

"Second: I give, devise and bequeath to my beloved wife, Harriet Rogers Flannery, all the residue of my estate, real, personal and mixed, for and during her natural life, with the right and privilege to dispose of any or all of such estate, whether real, personal or mixed, and to re-invest the same in such other securities, or real property, as she may deem wise and expedient. This privilege to be exercised, however, only by and with the written consent of my executors herein

named. I further direct and empower my said wife to use any or all of the corpus of my estate for her maintenance, pleasure or comfort, making her the sole judge of the necessity of using the corpus of my estate for the purposes named.

"Third: Upon the death of my wife, Harriet Rogers Flannery, I desire and direct that my estate, or such portion as may remain in her possession at the time of her death, be divided equally, share and share alike, among my children."

At the audit of the account of the executors of the will of James J. Flannery there was presented an agreement of the widow and children to distribute the balance "to Harriet Rogers Flannery, in trust, to be by her held in accordance with the terms and provisions of the last will and testament of James J. Flannery, deceased, without requiring her to give any bond or security whatsoever for the faithful performance of the trust or for any other purpose," and, accordingly, the decree was made "to Harriet Rogers Flannery, in trust for purposes specified in will and per agreement of parties in interest filed, said balance."

On the death of the life tenant her executors filed her account as trustee, in which it was shown that she had consumed $60,552.16, leaving a balance of $739,374.86, of which about $127,000 had been distributed to the remaindermen.

The only effect of the agreement filed at the audit of the executors' account was that the widow should not be required to give bond, something she was not obligated to do under the will or by act of assembly.

While section 23 of the Fiduciaries Act of June 7, 1917, P. L. 447, provides for a bond by the life tenant who elects to take personalty, it has been held that, where said life tenant has the power of consumption under the will, section 1 of the Act of May 17, 1871, P. L. 269, does not apply, and section 23 of the Fiduciaries Act of 1917 is practically a reënactment of the former act.

In Powell's Estate, 340 Pa. 404, 410, the court said:

"The fact that she filed no bond at the time of the decree of distribution is likewise immaterial. The failure to give a bond as required by the Act of May 17, 1871, P. L. 269, does not alter the rights of the life tenant and remaindermen. A life tenant who takes possession of the assets without giving bond is not a trustee for the remaindermen but is a debtor to them the same as if she had given a bond: *Gillett's Est.*, supra [130 Pa. Superior Ct. 309]; *Strawbridge's Est.*, 14 D. & C. 703 (Gest, J.); see also *Kirkpatrick's Est.* [284 Pa. 583], supra. Furthermore, the Act does not apply to a life tenant having the power of consumption of principal. As such life tenant, appellee was under no duty to enter security for the protection of remaindermen: *Heppenstall's Est.*, 144 Pa. 259, 23 A. 860. As was said by Judge Black in *Hambright's Appeal*, 2 Gr. 319, 321: 'What sort of a bond shall she give? What shall be its penalty and conditions? Any bond that could be devised would limit her discretion, in a way never intended by her husband. He permitted her to decide for herself how much she should spend. If we put her under an obligation to consume none, or only a part, we take away her clear right. He gave to those in remainder nothing, in case she left nothing. If we secure them any particular sum, we award to them what they have no title for. It is argued, that she ought to give bond to use it providently, and to leave at her death, all that she does not need during her life. I repeat, that she alone is to be the judge of her wants. The testator gave her the *full* use of the money. He trusted her, and we must do the same.' This would seem by unanswerable logic to dispose of appellant's contention."

The agreement to distribute to her as trustee, followed by the decree in that form, did not impose any new liability upon her, because the balance was to be taken and held by her in trust for the purposes specified

in the will, and under this she had power of consumption and was the sole judge of the necessity of using the corpus.

Nor do we think that the distribution to her in trust in any way changed the relationship between her and the remaindermen. As quoted above from Powell's Estate (p. 411), "A life tenant who takes possession of the assets without giving bond is not a trustee for the remaindermen but is a debtor to them the same as if she had given a bond."

At the audit of the account filed by the executors of the deceased widow there were claims presented by alleged creditors of the widow, but objections were interposed, not so much on the merits of the claims, but, for the reason that this is an account of a trustee, and the trust estate is not liable for any obligations of the widow, who was acting in a trust capacity. This position is not tenable under the rulings in Powell's Estate, supra, and the cases therein cited, as well as many others. We quote from Pollock's Estate, 306 Pa. 301, 312:

"Merely thinking oneself a trustee does not make one such, if no trust was created. Where, in fact, a trust relationship does not exist, no mistaken assumption can change an absolute ownership into a trust estate. The situation in Kirkpatrick's Estate, 284 Pa. 583, was somewhat similar. In that case we held that where, in a will, an estate for life was given, the life tenant was not a trustee for the benefit of the remaindermen, although a decree was entered awarding the property to the life tenant 'in trust for the purpose specified in will of deceased.' The question of whether or not a trust existed was raised thirty years later, and we said: 'This decree did not, however, fasten a trusteeship on the life tenant with respect to that property; to say "in trust" was purely a gratuitous and voluntary statement on the part of the judge who made the decree . . .' A fortiori, in the case at bar, where the answer likewise

depends upon a true interpretation of a will, if in fact there was no trust, the mere mistaken assumption that a trust existed cannot create one. The opinion of Roland Pollock and his counsel is not to be substituted for the will of the testator. It is not what they thought, it is what he did. The filing of an account as trustee, if in fact there was no trust, could not in any way impress a trust upon this stock. To hold otherwise would be a flagrant disregard of the intention of the testator."

In Ertel's Estate, 19 D. & C. 95, 98, Judge Stearne in a concurring opinion said:

"A legal life tenant, who enters security for the protection of the remaindermen, becomes the sole and absolute owner of the property, which thereafter ceases in every way to form any part of decedent's estate: Reiff's Appeal, 124 Pa. 145; Letterle's Estate, 248 Pa. 95; Weir's Estate, 251 Pa. 499; Kirkpatrick's Estate, 284 Pa. 583; Strawbridge's Estate, 14 D. & C. 703." The opinion also states (p. 99) :

"Following Weir's Estate, supra, were two cases relating to such trusteeships created prior to the Fiduciaries Act: Loewer's Estate, 263 Pa. 517, and Kirkpatrick's Estate, 284 Pa. 583. In the Loewer case the application for a trustee was joined in by the remaindermen, while in Weir's Estate the petition was by the life tenant alone, without the joinder of the remaindermen. Kirkpatrick's Estate (p. 586) points out this distinction. As a result, in cases arising prior to the Fiduciaries Act, the only ones which hold a trustee as an insurer of the fund are those where the life tenant alone acts without consent or joinder of the remaindermen."

In Gillett's Estate, 130 Pa. Superior Ct. 309, Justin E. Gillett gave his wife a life estate with remainder to children. After the death of the widow the administrators d. b. n. of the estate of the husband filed a petition to require the executor of the widow's estate to turn over to the administrators the assets belonging to the trust estate. Keller, P. J., in the opinion, said (p. 318) :

"The will did not make her a trustee, nor direct that she should hold the property as a trustee, but it gave it to her individually to use during her lifetime, and we are of opinion that neither she, nor those claiming under her, can change, or alter her relationship to the fund, which she took over. It is conceded that had Lucy G. Gillett entered the security provided by law for a life tenant to enter when taking over property to the end that the remaindermen may be secured, there could be no contention but that she took the property as her own and became responsible for its value, but it is alleged that because she neglected to perform that duty, she thereby placed herself in a position more favorable and advantageous to herself than if she had done her duty and entered the security. We are not convinced of the soundness of this contention. The fact that she omitted a duty, cannot relieve her from the responsibility she owed to the remaindermen on account of the property which she took over as life tenant. Had the security been entered, it would have been solely for the protection of the remaindermen, and certainly they cannot be denied the protection they have without it, simply because she failed to enter the security. 'The waiving of giving of security may be made by a testator,' *Kirkpatrick's Estate*, 284 Pa. 583. Likewise the remaindermen may waive the giving of security. *Chalfant's Estate*, 294 Pa. 331. . . . Judge Gest in *Strawbridge's Estate*, 14 D. & C. 703, held that the failure to enter the bond by a life tenant does not affect the rights of the life tenant or the remaindermen. When Lucy G. Gillett took over the property which she did take over as a life tenant, the property became to all intents and purposes her own, and she became a debtor to the remaindermen, to the value of the property so taken. Where a life tenant takes over personal property to use the same during her lifetime pursuant to a will, the result is: 'In effect to make the sum thus received by testatrix a part of her individual estate. It could be invested by her in the purchase of real estate, embarked

in mercantile adventures, or stock speculations, or expended in her living and family expenses as she deemed advisable. The money became essentially her own; and she was simply a debtor, to the parties ultimately entitled at her death, whose claim is now payable out of her estate, and, in the event of its insolvency, by her sureties upon the bond given by her as legatee for life. The remaindermen are now creditors of the estate of the testatrix, and are entitled to interest from the date of her death . . . .' "

It is contended by counsel for the remaindermen that this case is covered by Loewer's Estate, 263 Pa. 517, but we do not think the cases are parallel. In that case, upon the petition of the widow and the remaindermen a trustee was appointed and the assets distributed to it. There was no power of consumption under the will.

It is also the contention of said counsel that distribution of the balance now before the court should be made to the remaindermen, without any deductions for debts incurred by the life tenant. Under the many decisions on this subject, that the remaindermen are merely creditors of the life tenant, we cannot agree with this theory. Under the terms of the will the widow had power of consumption, and, therefore, could obligate the estate; but, even if we adopted this plan and adjudicated the claims presented, it would not be in justice to other creditors of the life tenant.

In Strawbridge's Estate, 14 D. & C. 703, an account was filed by the executor of a deceased life tenant, but the court refused to audit it, because it was not properly filed. Judge Gest in his opinion said (p. 704) :

" 'After the adjudication upon the account of the executor of William C. Strawbridge's estate, and the award to the widow, and payment made to her consequent to such award, the assets ceased to be part of the estate of William C. Strawbridge, and became the property of his widow. She thereby became the debtor to the remaindermen for the amount so awarded. . . .' "

While there was no power of consumption in that estate, the same rule prevails as shown in the cases hereinbefore cited.

The assets shown in the account filed are part of the assets of the estate of the widow, and claims of creditors should be presented at the audit of the account of the executors in her estate. We believe that the practice adopted in Strawbridge's Estate is proper, and will follow it.

### Decree

And now, December 10, 1941, upon consideration of the foregoing case, it appearing to the court that the account is not properly filed and cannot be confirmed absolutely, it is ordered, adjudged, and decreed that the account be returned to the files of the clerk to be marked "not audited."