## Commonwealth v. Johns

*Stephen F. Poklemba*, for plaintiff.

*Frank J. Rejevich*, for defendant.

TROUTMAN, J., December 11, 1958. — Plaintiff caused to be issued a writ of scire facias to revive and continue the lien of its judgment entered to no. 371, December term 1952, in the Court of Common Pleas of Northumberland County, Pa., for the term of five years, naming as defendants, Alfred Johns, deceased, and Myrtle Johnson, terre tenant. Myrtle Johnson, the named terre tenant, filed an answer to the said writ in which she avers that the judgment which plaintiff seeks to revive is not a lien on her real estate inasmuch

as the late defendant, Alfred Johns, had only a life estate in said property and, therefore, could not bind the fee which was devised to her as a remainderman under the will of Elizabeth Johns, deceased.

There being no issue of fact raised by the pleadings and the only question being one of law, namely, the interpretation of the will of Elizabeth Johns, deceased, as to the nature of the estate given to her late husband, Alfred Johns, the parties, by their counsel, have stipulated that trial by jury be waived and that the court decide the question of law herein raised.

The record discloses that the real estate in question was conveyed to Mrs. Elizabeth Johns by deed dated April 21, 1906, which is recorded in the Office for the Recording of Deeds for the County of Northumberland. Elizabeth Johns died, testate, in the year 1932 and by her last will and testament devised and bequeathed all of her property, real, personal and mixed, unto her husband, Alfred Johns, for and during the term of his natural life and upon his death, she gave, devised and bequeathed the same, or so much thereof as may remain, unto her daughter, Myrtle Johns. Myrtle Johns has since married, and her name is now Myrtle Johnson, the same person named as terre tenant in the writ of scire facias.

On October 5, 1939, Alfred Johns made application for public assistance and signed a reimbursement bond which plaintiff caused to be entered to 625 February term, 1940, in the office of the prothonotary, Northumberland County, Pa., on January 25, 1940.

Alfred Johns died on July 14, 1956. The present writ of scire facias to revive and continue the lien was issued on October 4, 1957, in which Myrtle Johnson was named terre tenant.

Plaintiff contends that under the will of Elizabeth Johns, deceased, defendant, Alfred Johns, received a

life estate with the power to consume and consequently, he had the power to bind the real estate by the lien of a judgment signed by him alone The terre tenant, Myrtle Johnson, contends that by virtue of the will of the said Elizabeth Johns, deceased, said defendant, Alfred Johns, received a life estate only without any power to bind the interest of the remainderman, Myrtle Johnson. We have thus for consideration the construction of testatrix' will.

The intention of testatrix is the polar star in the construction of wills and this intention must be ascertained by a consideration of the entire will which must be read in the light of the circumstances surrounding her when she made it. In determining testatrix' intention, it is not what the court thinks she might or would have said in the existing circumstances, or even what the court thinks she meant to say, but what is the meaning of her words: Conlin Estate, 388 Pa. 483, 486, 488; Mulert Estate, 360 Pa. 356, 359; Sowers Estate, 383 Pa. 566, 570.

If defendant, Alfred Johns, received a life estate with the power to consume under the will of his late wife, Elizabeth Johns, then he would have had complete use and enjoyment of the property and in fact, all the benefits of absolute ownership, except the power to control the devolution of the unconsumed portion upon his death: Bryne's Estate, 320 Pa. 513, 519. Hence, if Alfred Johns could convey the real estate and use the proceeds for his own use, then he could give a valid judgment for moneys advanced for his support and maintenance by the Department of Public Assistance: Umstead v. Umstead, 34 Berks 78, 80; Commonwealth of Pennsylvania v. Lilly C. Lloyd, 23 Northumb. 102, 111; Reiter v. Department of Public Assistance, 89 D. & C. 334.

A reading of the will of Elizabeth Johns clearly

shows that it was her intention that her husband should have a life estate in all of her property, real, personal and mixed. It is also clear that, upon her husband's death, she wanted her daughter to have the remainder. The question arises as to the interpretation to be given to the words following the life estate: "The same, or so much thereof as may remain." By the use of this language, did the testatrix intend that the life tenant have the power to consume all of the estate, or was she, in effect, describing the estate to be received by her daughter? A great deal of confusion appears in the cases as to when certain words create a life estate with power to consume and when they do not.

We are of the opinion that the testatrix in this case created a life estate without the power to consume.

One of the earliest cases on this subject is Follweiler's Appeal, 102 Pa. 581. In that case, the testator devised and bequeathed all of his property, real and personal, to his widow, to keep and enjoy during her lifetime and after her death what shall be left shall be divided equally among her heirs, share and share alike. It was argued that the words "what shall be left" implied a power of sale of the real estate and gave the widow an estate in fee simple. The court held that the words were intelligible in their relation to the personal estate and, in the absence of any expressed power to sell the real estate, they do not refer to it or enlarge in any manner the life estate to the widow, but upon her death the remaindermen were entitled to the real estate and the unexpended balance of the personal property.

The language in the present case is very similar to the language construed in Cox v. Sims, 125 Pa. 522, although the language used by testator was much stronger in support of a finding that a life estate with power to consume was created than in the present case.

In that case, testator gave to his wife the residue of his estate, real and personal, to have and to hold the same for and during the whole period of her natural life, and from and immediately after the death of his wife, all the property devised or bequeathed to her or so much thereof as may remain unexpended, was devised and bequeathed unto his children. The court held that in such case, the testator's clear intent was to give his wife a life estate only. The words "so much thereof as may remain unexpended" were applicable to the personal estate alone, and, serving no other purpose than to describe what the children should take, did not enlarge the land devised into a fee.

The decisions of the Supreme Court in Follweiler's Appeal, supra, and in Cox v. Sims, supra, have been frequently cited but have never been repealed by the Supreme Court of Pennsylvania.

The present will does not give any express power on the part of the life tenant to sell the real estate, and any such power would have to be implied from the language used in her will. When she used the words, "the same, or so much thereof as may remain" she did not mean the unexpended balance of her estate that might remain but used that language to describe the estate to be received by her daughter, Myrtle Johns. She disposes of all of her property, real and personal, in one single sentence and, a further explanation of the language used by her, namely, "or so much thereof as may remain," would mean the personal property that would be in existence at the time of the life tenant's death. We are of the opinion that this language should be given no other meaning than might be implied in the use of the words "residue or remainder of my estate," following the end of a life estate.

In Suttner Estate, 348 Pa. 159, the Supreme Court said:

"The words 'residue' and 'remainder' are technical legal terms with a well understood and definite meaning. They signify all that is left after the gifts specified or designated have been paid or satisfied. . . . Technical words, or words of a definite meaning, are to be construed according to their legal or definite effect."

In support of this contention that testatrix created a life estate with the power to consume, plaintiff cites Hege v. Ickes, 267 Pa. 57, and Zanich v. Okum, 109 Pa. Superior Ct. 200. These cases are clearly distinguishable from the present case. In Hege v. Ickes, supra, the Supreme Court held that the language contained in the will created a life estate with the power to consume the principal. The will in that case devised the residuary estate, real and personal, to the wife to have and to hold for her natural life and at her death, should she have any of the estate left, an adopted daughter should be given the sum of $1,000, and should there be any balance of the estate, it should descend according to the laws of the State of Pennsylvania. This language is clearly distinguishable from the language used in the present will. The court considered its decision in Follweiler's Appeal, supra, and distinguished that case from the Hege case in that the gift of the remainder was not absolute but was clearly contingent upon whether there would be an estate left at the death of the life tenant.

In Zanich v. Okum, supra, the Superior Court held that the following language created a life estate with the power to consume:

"I also give to her, my said wife, the use, improvement and income of all my real estate whatsoever and wheresoever the same may be at the time of my death, for and during her natural life, and at the death of my said wife, all the real estate hereby devised to her as

aforesaid, or so much thereof as may then remain unexpended, I give and devise unto my children. . . ."

In this opinion the Superior Court recognized the ruling in the case of Follweiler's Appeal, supra, but distinguished the language used in each case. Not only was there separate dispositions of the personal and real estate in the Zanich case but there was also the use of the word "unexpected" after the phrase "so much thereof as may remain," which would clearly indicate that the life tenant could spend and use the property.

There are several cases frequently cited for the proposition that a life estate with the power to consume was created, namely Byrne's Estate, 320 Pa. 513, and Brennan's Estate, 324 Pa. 410. Both of these cases can be distinguished from the present case. In Byrne's Estate, supra, the will gave the remainder of the estate to a sister, absolutely, in one paragraph and in the next paragraph provided that upon her death, should any part of the estate remain, the same was given to a niece. There an absolute estate was created and then cut down in the succeeding paragraph. In Brennan's Estate, supra, the will devised and bequeathed the residuary estate to the wife, with authority to sell and dispose of any real estate and then in the succeeding paragraph provided that after the death of his wife, the remainder of his estate was to pass in equal shares to certain relatives. In both of the above situations, the first paragraphs of the respective wills, considered alone, created estates in fee simple, which were subsequently restricted by the respective succeeding paragraphs. The construction of the language used in these wills could only be construed as creating a life estate with the power to consume, rather than a conventional life estate without such power.

In the present case, there was created a conventional life estate with the disposition of the remainder. There was no language used by the testatrix which would give the life tenant power to consume the principal of the estate.

The right of the first taker to entrench upon the corpus of an estate has been inferred where the gift over has been described as: "remaining", Gold's Estate, 133 Pa. 495; "whatever remains", Watson's Estate, 241 Pa. 271; "the remainder", Brennan's Estate, supra; "so much thereof as may then remain unexpended", Zanich v. Okum, supra; "what part of my estate, real or personal, is left", Seigworth's Estate, 61 Pa. Superior Ct. 235; "whatever property may be left", Fidelity Title and Trust Co., v. Nibozin, 88 Pa. Superior Ct. 113; "the property left", Benedict v. Hawthorn, 270 Pa. 529; "the balance", Houser v. Houser, 268 Pa. 401; "should any part of my estate remain", Byrne's Estate, supra; "should she have any of my estate left", Hege v. Ickes, supra. All of these cases involved the interpretation of each particular will and are distinguishable on their facts from the case before us. They clearly illustrate the proposition that each will is its own best interpreter, and the construction of one is no certain guide to the meaning of another: Brennan's Estate, supra, 414.

A careful reading of the language used by testatrix in her will leads us to the conclusion that she intended that the life tenant acquire a determinable life estate in her real estate and, therefore, the life tenant did not have the power to consume the principal and had no power to create the present lien of the judgment upon such real estate.

*Order*

And now, to wit, December 11, 1958, it is ordered, adjudged and decreed that the judgment in this case

is not a lien against the real estate owned by Myrtle Johnson and acquired by her under the will of Elizabeth Johns, deceased, and judgment is hereby entered in favor of the terre tennant, Myrtle Johnson, and against plaintiff. Let an exception be noted for plaintiff.