## McManus's Estate.

212    267<br>s214   635

*Executors and administrators—Joint executors—Trust company—Renunciation.*

A trust company which has been appointed an executor of a will jointly with one of the children of the testatrix, is justified in refusing a request made to it by the testatrix's children and residuary legatees to renounce its executorship.

Where a son of testatrix and a trust company have been appointed executors, and the son has proceeded with the appraisement and distribution of the estate to the entire exclusion of his coexecutor, the trust company may compel the son to file an account, not only that it may be protected against citation from unknown creditors, but also that it may have an opportunity to present its claim against the estate for commissions, expenses incurred and counsel fees. Wickersham's App., 64 Pa. 67, distinguished.

Argued Feb. 28, 1905. Appeal, No. 332, Jan. T., 1904, by Reading Trust Company, Executor of Caroline McManus, deceased, from decree of O. C. Berks Co., dismissing petition for citation to account in Estate of Caroline McManus, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and ELKIN, JJ. Reversed.

Petition for citation.  Before BLAND, P. J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the petition.

*Isaac Hiester*, for appellant.—The appellant cannot be required to assume the risk of distribution out of court nor the burden of excusing want of assets in its hands in case of a citation from an unknown creditor, but is entitled to the absolute protection of a decree of distribution : Jones's App., 99 Pa. 124.

The appellant has incurred expenses and liability for counsel fees in the performance of its duties as executor and is entitled to have these claims considered by the court and payment decreed out of the estate : Yeakel's Est., 30 Pa. C. C. Rep. 282.

*Cyrus G. Derr*, for appellee.—The rule is that each executor has power to execute .the will ; that he may himself administer the assets coming into his hands, file a separate appraisement and a separate account, which is just what the appellee in this case did : Lafferty's Est., 184 Pa. 502 ; Packer v. Owens, 164 Pa. 185 ; Hengst's App., 24 Pa. 413.; DeHaven v. Williams, 80 Pa. 480 ; Irwin's App., 35 Pa. 294 ; Boyd v. Boyd, 1 Watts, 365.

If the appellant was entitled to any part of the said compensation, its remedy was an ordinary action of law : Wickersham's Appeal, 64 Pa. 67.

OPINION BY MR. JUSTICE BROWN, May 24, 1905 :

Caroline McManus died September 4, 1903.  To her will, executed November 9, 1885, she added five codicils.  By the first, dated January 31, 1888, she appointed the Reading Trust Company, the appellant, her executor, and by the second, dated January 27, 1889, she named her son, Francis P. McManus, coexecutor with it.  Five days after her death the following note was addressed to the trust company :

" READING, PA., Sept. 9, 1903.

" To THE READING TRUST COMPANY,

" DEAR SIRS : The late Caroline McManus left a will in which her son Francis P. McManus and The Reading Trust

Company are named as executors. The will was made many years ago, and while the undersigned, being all the children and residuary legatees under the same, recognize the high standing of your company and its entire fitness to execute any trust, yet it is desirable to the parties that both the executors named in the will shall renounce so that letters of administration with the will annexed, may be issued in accordance with the wishes and interests of the family. We therefore respectfully ask that you further the family wishes by formally renouncing the executorship.

" Very respectfully yours,

" CATHARINE ARCHER,

" MARTHA McMANUS,

" JOSEPH McMANUS,

"FRANCIS P. McMANUS."

To this a reply was sent that the company declined to accede to the request. On September 18, 1903, the will and codicils of the decedent were admitted to probate and letters testamentary issued to the two executors named. On September 24, the trust company notified Francis P. McManus that it had duly qualified as executor and was ready and desirous to co-operate with him in advertising the issue of letters testamentary, in making an inventory and appraisement and in performing the other duties devolving upon them as executors. Without notifying the trust company of his intention to do so, the appellee appointed appraisers, had the personal estate of the decedent appraised and filed an inventory in the office of the register on October 5, 1903. On October 24, 1903, the trust company presented its petition to the court below alleging that its coexecutor had taken exclusive possession of all the assets of the estate, had afforded it no access thereto nor inspection thereof, had made an inventory without giving it any opportunity to attend, had appointed appraisers and caused an appraisement to be taken and filed, had wholly excluded it from any participation in the proceedings to appraise the assets and had asserted his purpose of proceeding to administer the estate to its entire exclusion ; and the prayer was for his removal.

To the petition for the removal of the appellee as one of the

executors an answer was filed, and, after testimony had been taken by the petitioner and respondent and the case submitted to the court for its decision, it was requested not to dispose of the matter at that time, as negotiations were pending for an adjustment of the differences between the executors. Shortly thereafter the learned president judge became ill and was unable from February, 1904, to the following September to attend to the duties of his office. On September 20, 1904, the appellee filed a second supplemental answer, in which he averred that, a year having expired since the granting of the letters, he had paid the pecuniary legacies given in the will of the testatrix, and, pursuant to a family arrangement between all the residuary legatees and parties in interest, all the personal property, moneys and securities of the estate had been divided in accordance with the provisions of the will of the testatrix, and that all of her debts and claims against her estate had been paid in full. On September 29 a supplemental petition was presented by the appellant, asking for an order and decree that the appellee forthwith file an account of his acts and doings in the premises, "in order that the same may be duly advertised and that a proper decree of distribution may be made, considering and allowing all just claims that may be presented against the estate, and particularly considering and allowing the claim of your petitioner for such compensation as under the circumstances your petitioner is justly entitled to receive and reimbursing your petitioner for the costs, counsel fees and expenses expended and incurred in and about its said executorship." To this an answer was filed, in which the appellee averred that there had been executed to him proper releases from all parties interested in the estate of his mother as beneficiaries or residuary legatees.

In view of the suspension of the proceedings below for nearly a year, during which time the appellee, as one of the executors, paid, as he alleges, all the debts of the decedent and made distribution among the legatees, from whom he received proper releases, we do not now deem it necessary to decide whether he ought to have been removed if the court had promptly disposed of the petition for his removal, and shall, therefore, pass only upon the question as to whether he should be compelled to file an account at the instance of his coexecutor.

Before passing upon this question, it is proper for us to say that the appellant's refusal to renounce its right to letters testamentary on the estate of the deceased, when requested so to do by her children and residuary legatees, is to be commended. Their request is termed a reasonable one by the learned counsel for the appellee. It was unreasonable and inconsistent with proper respect for the memory of the testatrix by her children and beneficiaries. She had not seen fit to make her children her executors, and after naming but one of them as an executor, she joined the appellant with him, manifestly because she was unwilling that the settlement of her estate should be committed to him alone. When, upon the probate of the will, the appellant learned, if it did not know before, that it had been named as one of the executors, it properly recognized what it felt to be a duty which it owed to the deceased and which it assumed by taking out letters testamentary. Unless it had agreed with the deceased that it would act as one of her executors, and, in reliance upon its promise to do so, she had appointed it, it might for any good reason have declined to act without inviting criticism; but it certainly ought not to have done so for the reason given in the letter addressed to it requesting its renunciation. It is a trust company, not a private individual, and one of its corporate purposes, known to the public, is to act as executor, and, when named as such, a worse reason why it should refuse to act can hardly be conceived than that the children of a testator, to whom he was unwilling to commit the administration of his estate, are opposed to the executor named by him and wish to take the settlement of the estate into their own hands. This is just the situation here, and the example of the appellant's refusal can well be followed whenever the same reason is given to a trust company why it should not act as executor or trustee.

In refusing to require the appellee to file an account, the court was of the opinion that, as he had authority as one of the executors to pay all of the debts of the estate out of the assets in his hands and to make distribution among the legatees, the appellant had no standing to ask for an account from him after he had thus settled the estate himself. In support of this view the learned president judge of the orphans' court cited DeHaven v. Williams, 80 Pa. 480; Wood's Appeal, 92 Pa. 379,

and Willson's Appeal, 115 Pa. 95. In these cases the question was as to the effect of the act of one executor upon his co-executors and the estate they represented. But that is not the question here, and the cases cited have no bearing on it. What the appellant asks us to say is, that as executor it has certain rights as against its coexecutor, who owes it certain duties. When it accepted letters testamentary and qualified as one of the executors, its rights as the personal representative of the deceased in the settlement of her estate were no less than those of the appellee. If he took into his own hands all of the assets and utterly excluded his coexecutor from any participation in the settlement of the estate, it has a right now to know from him that his stewardship has been so discharged that no further accountability rests upon it; and it has a right to know this by a decree of the court after passing upon the account of the sole stewardship. In no other way can it be known to a certainty what it is its right to know. The appellee says that he has paid all of the debts of the decedent, and the court has so found in this proceeding. What may have been found in the controversy between these two executors could affect no unknown creditors, and, if there be such, the appellant is entitled to protection against citation from them, to be afforded it by the appellee's pursuing the usual and ordinary course of filing an account, an adjudication of which will protect both the executors.

And, for another reason, the appellee ought to file an account. Appellant asks for it in the words of its petition, "in order that the same may be duly advertised and that a proper decree of distribution may be made considering and allowing all just claims that may be presented against the estate and particularly considering and allowing the claim of your petitioner for such compensation as under the circumstances your petitioner is justly entitled to receive and reimbursing your petitioner for the costs, counsel fees and expenses expended and incurred in and about its said executorship."

There is no denial in the answer that the appellant is entitled to compensation, nor that it has incurred costs and is liable for counsel fees to be paid by the estate. Such costs and counsel fees are for the consideration of the court and for its allowance of them on an adjudication of the account of the

executor having all the funds of the estate in his hands. The contention of the appellant, that it ought to be allowed to present its claim for consideration on the court's adjudication of the account is dismissed for the reason that its remedy is by a suit on the common law side of the court to recover from its coexecutor its proper share of the commissions in his hands, and Wickersham's Appeal, 64 Pa. 67 is referred to in support of this. In that case one executor had filed an account, in which he took credit for commissions, and, after the absolute comfirmation of the account, it was held that a claim for one-half of what the accounting executor had taken for himself from the estate was not a claim against the estate, but against him as an individual, and it was not for the orphans' court to pass upon the claim as one against the estate, of the decedent. THOMPSON, J., makes this entirely clear and at the same time says : " I will not say that the orphans' court might not apportion the commissions allowed between coexecutors and administrators." The appellant is making no claim in the orphans' court for a portion of the commissions which its coexecutor has taken for himself. Its petition is that it may be allowed to present its claim against the estate for commissions, expenses incurred and counsel fees. These, as claims against the estate, are for the orphans' court to pass upon. This is the clear distinction between Wickersham's Estate, infra, and the present case, manifestly overlooked by the learned court below.

The decree of the orphans' court, dismissing the petition for an order and decree that the appellee file an account, is reversed, and the record is remitted with direction that the said court do order and decree that Francis P. McManus, the appellee, file within thirty days his account as executor of the estate of Caroline McManus, deceased, the costs in the proceedings below and on this appeal to be paid by him.