## Stone's Estate

*Guy Thorne* and *D. H. Henry*, for exceptant.

*L. N. Dilley*, for respondents.

ROWLEY, P. J., July 1, 1946.—This matter is before the court upon exceptions to the auditor's report in a decedent's estate.

The exceptions are filed by Harry C. Heile, surviving executor of the will of Clara C. Stone.

Exceptant states three questions for decision. We shall consider them in the order presented in exceptant's brief.

"1. Has the orphans' court, or the auditor appointed by said court, any jurisdiction to pass upon a division of commission between two executors, when there is no question raised as to the amount of the commission, or any question in which the estate is in any way interested, and, if the auditor finds that he has jurisdiction, then was the division made by the surviving executor a fair and equitable division?"

The executor, Harry C. Heile, previously filed a petition to dismiss exceptions filed on behalf of the estate of his coexecutor which challenged the following items of the executor's account:

"Clara Heile Estate, Executor's commission $487.89
Harry C. Heile, Executor's commission     805.12"

The contention of Heile in that proceeding was that the court was without authority to examine the division of commissions between joint executors.

That contention was based upon Wickersham's Appeal, 64 Pa. 67. In an opinion discharging Heile's petition, we undertook to point out that Wickersham's Appeal did not govern the instant question. In the Wickersham case one lump sum was claimed as executors' commission which was allowed by the auditor's report. After confirmation of the auditor's report, the whole sum was paid to one of the executors. The Supreme Court held that "after the whole estate has been settled and the money all distributed" the orphans' court will not entertain a dispute between the executors on the division of the commission.

In the instant case, separate claims for commission were made. No commission had been "allowed" when the exception thereto was filed. Heile and his coexecutor each had a claim for compensation against the estate. It was the clear power of the orphans' court, or its auditor, to review these claims.

In Wickersham's Appeal, the court said:

"I will not say that the Orphans' Court might not apportion the commissions allowed between co-executors."

McManus's Estate, 212 Pa. 267, clarifies Wickersham's Appeal. In the former case the court declared:

"The appellant is making no claim in the orphans' court for a portion of the commissions which its coexecutor has taken for himself. Its petition is that it may be allowed to present its claim *against the estate* for commissions, expenses incurred and counsel fees. These, as claims against the estate are for the orphans' court to pass upon. This is the clear distinction between Wickersham's Estate, infra, and the present case, manifestly overlooked by the learned court below." (Italics supplied.)

Counsel for Heile likewise overlooked the distinction between the instant question and the point decided by Wickersham's Appeal.

The learned auditor reduced the executor's commission claimed by Heile from $805.12 to $700.37, and increased the compensation of the deceased coexecutor from $487.89 to $592.63.

Heile testified that he arrived at the division of commission by allowing his coexecutor one half of five percent for estate funds deposited during her lifetime. He testified that about one month following the death of his coexecutor, several checks were received which he endorsed and deposited. In one instance the transaction was simply a transfer of estate funds from a savings department to a checking account in the same bank. Heile testified that the deceased executor kept the estate records during her lifetime, which included 11 months of the administration period.

Exceptant's contention appears to rest upon a theory that five percent of the estate is the appointed commission for its administration and that any part of

five percent that was not earned by his coexecutor is due exceptant. It has long been customary to allow five percent as a maximum for the administration of an estate of ordinary difficulty.

The instant estate, except for a dwelling sold for $4,500, was virtually cash. There were no debts or claims that accrued in the lifetime of testatrix. The accountant claimed executors' commissions aggregating $1,293.01. If the amount had been challenged by a party in interest, accountant might have encountered difficulty in justifying the amount.

Clara H. Heile, the coexecutor, died September 13, 1944. Thereafter, exceptant endorsed and deposited some checks payable to the estate, and on October 20, 1944, filed the final account, presumably made up by counsel from the record kept by the deceased executor.

Testimony at the audit as to the character and extent of the services rendered by exceptant was meagre. In the main it was confined to the services subsequent to the death of his coexecutor, to wit, deposit of certain checks and filing of the account. For this part of his services the auditor awarded exceptant $107.75 more than his coexecutor. In our opinion the awards of the auditor liberally compensated both executors for their services. There was not an appointed commission of five percent for division among the executors. An executor should receive a compensation adequate to his care and trouble. But it would be debasing the sanctity of the trust to consider it an office of profit. It is an honorable duty, which ought not to be undertaken from motives of mere gain. The character of the trust which the executor has administered, the nature of the duties he has performed, the extent and value of the labor he has bestowed, and the kind of securities in which he has found the funds of the estate invested when it came into his hands, are all to be considered in adjusting the amount of his allowance.

The auditor heard such scant testimony as was offered as to the services rendered by the executor. There were produced at the hearing the records kept by the deceased executor. From the evidence produced, the auditor concluded that just compensation for the executors was $592.63 for the deceased coexecutor and $701.37 for the surviving executor. Even if too liberal allowance was made to the deceased executor—which we do not find—the surviving executor would not be entitled to receive such excess.

In our opinion the auditor's award amply compensated exceptant for his services. The exception is therefore dismissed.

The second question presented by the exceptant is:

"2. Is the provision against the marriage of a legatee, Grace Heile, under the fifth paragraph of the will, a valid provision?"

The fifth paragraph of the will reads:

"I give and bequeath to Grace Heile, my niece, of Transfer, Pennsylvania, the sum of one thousand ($1,000.00) dollars provided she does not marry Thomas Brazil. If she does enter into a marriage with the said Thomas Brazil, then this bequest to be void."

The right of Grace Heile to receive the legacy was dependent upon her ability to meet the condition "that she does not marry Thomas Brazil".

The time when the condition became effective and was to be met was at the time of the death of testatrix. It was then that the gift to her was to take effect, provided she had not married Thomas Brazil. The condition required by the testatrix was one of fact, and that was to be determined as it existed when the will took effect: McKinley v. Martin, 226 Pa. 550, Thompson's Estate, 304 Pa. 349.

The auditor found that the legatee did not marry Thomas Brazil, and this fact is undisputed. It neces-

sarily follows that Grace Heile is entitled to receive the legacy bequeathed to her. Accordingly, this exception is dismissed.

The third matter presented by exceptant is:

"3. To determine the limitations of the bequest to Bert Heile in the residuary clause, items 14 and 15 of the will."

Items 14 and 15 of the will read:

"14. All the rest, residue and remainder of my estate, whatsoever, and wherever situate, I give, devise and bequeath to the following persons, divided into four (4) shares for that purpose:

"I give, devise and bequeath to my brother Bert Heile of Harrisburg, Pennsylvania, one share for and during the term of his natural life, he to have the use and the income thereof and as much of the principal as he may need for his comfortable maintenance and support, and at his death whatever may remain to the remaining residuary legatees under this my will, or to their heirs.

"15. In the case of the death of either of my residuary legatees holding a life estate, with the power to consume, the other residuary legatee, holding a like estate, shall have only such estate in whatever may remain of the legacy of the other."

Exceptant seeks to make the point that Bert Heile may not receive his legacy without entering security for the remainderman. This contention exceptant bases upon "the right of a man to do as he will with his own".

The principle has no application here. The legacy is a life estate with power to consume.

Undoubtedly, testatrix could have required the life tenant to enter security. But neither the will nor any statute contains such requirement.

"The failure to give a bond as required by the Act of May 17, 1871, P. L. 269, does not alter the rights of

the life tenant and remaindermen. A life tenant who takes possession of the assets without giving a bond is not a trustee for the remaindermen but is a debtor to them the same as if she had given a bond: Gillett's Est., supra; Strawbridge's Est., 14 D. & C. 703, (Gest, J.) ; see also Kirkpatrick's Est., supra. Furthermore, *the Act does not apply to a life tenant* having the power of consumption of principal. As such life tenant, appellee was under no duty to enter security for the protection of remaindermen: Heppenstall's Est., 144 Pa. 259, 23 A. 860. As was said by Judge Black in Hambright's Appeal, 2 Gr. 319, 321: 'What sort of a bond shall she give? What shall be its penalty and conditions? Any bond that could be devised would limit her discretion, in a way never intended by her husband. He permitted her to decide for herself how much she should spend. If we put her under an obligation to consume none, or only a part, we take away her clear right. He gave to those in remainder nothing, in case she left nothing. If we secure them any particular sum, we award to them what they have no title for. It is argued, that she ought to give bond to use it providently, and to leave at her death, all that she does not need during her life. I repeat, that she alone is to be the judge of her wants. The testator gave her the full use of the money. He trusted her, and we must do the same' ": Powell's Estate, 340 Pa. 404, 410. (Italics supplied.)

The foregoing by unanswerable logic disposes of exceptant's contention. Accordingly, the exception is dismissed.

### Order

And now, July 1, 1946, all of the exceptions are overruled and the auditor's findings of fact and conclusions of law are affirmed, and the report of auditor as filed is confirmed.