## Powell's Estate.

Argued December 3, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*R. L. Coughlin*, with him *J. Q. Creveling* and *P. J. O'Connor*, for appellant.

*Charles B. Waller* and *Ben R. Jones, Jr.,* for appellee.

OPINION BY MR. CHIEF JUSTICE SCHAFFER, January 6, 1941:

Joseph C. Powell died July 18, 1904, leaving a will, in which he appointed his wife Clara, now Robertson, executrix.

These are the pertinent portions of the will: "First: I give, devise and bequeath all of my estate of every kind real, personal and mixed to my beloved wife, Clara H. Powell, if she shall survive me, to take, hold, control and use the same for and during the term of her natural life, and during said term to use and expend all of the income from said estate as she may desire, and further to use, convert and expend so much of the principal of said estate as she may find necessary in order to provide her a comfortable and satisfactory support.

"Second: Upon the decease of my said wife, I give, devise and bequeath all of my estate real, personal and mixed, which may then remain, to my three brothers, Lewis, Thomas and Abner Powell, and my sister, Annie Miller, to each of said persons an equal undivided one-fourth part, and to their heirs and assigns, forever."

It will be seen that the widow was empowered: (1) to take, hold, control and use the entire estate for and during the term of her natural life; (2) to use and expend *all* the income as she may desire; (3) to use, convert and expend so much of the principal as she may find necessary in order to provide her a comfortable and satisfactory support.

What was given to the testator's brothers and sister and their heirs was what "may then remain" after the widow has exercised her full powers and taken all the income and so much of the principal as she may deem necessary for her comfortable and satisfactory support.

December 14, 1905, the widow, as executrix, filed an inventory and appraisement of the estate. It shows the value of the estate to be $74,167.50, consisting solely of

securities, the principal item of which was 490 shares of stock of the Wilkes-Barre Record Company, valued at its par value of $49,000. It is over these shares that the battle before us is waged.

January 29, 1906, the executrix filed a first and partial account in which she charged herself with the inventory, which, with certain other items, brought the total charged against her as executrix to $80,316.83. The additional debits in the account were all cash items. She claimed certain credits, which left a balance in the account of $56,398.68. It was stated in the account that decedent was indebted to the extent of $19,987.42. April 6, 1906, this account was confirmed absolutely.

September 22, 1914, the executrix filed her final account in which she charged herself with the balance shown by the previous account and claimed credit for the total sum of $19,987.42, being the amount of decedent's debts which she claimed to have paid from her own receipts, leaving a balance of $36,391.28. December 18, 1914, this account was confirmed absolutely. It was audited February 15, 1915, and the balance, $36,391.28, was awarded to the widow, "to use the same during the term of her natural life, and during said term to use and expend all of the income from said estate as she may desire and further to use, convert and expend so much of the principal of said estate as she may find necessary in order to provide her a comfortable and satisfactory support, any portion of said fund remaining is hereby distributed to Lewis Powell, Abner Powell, Thomas Powell and Annie Miller in equal shares." February 26, 1915, the audit was confirmed absolutely and it was ordered that the accountant pay over the funds in her hands. No exceptions were filed and no appeal was taken.

March 3, 1939, twenty-four years after the absolute confirmation of the account and the entry of the final decree of distribution, Abner Powell, the surviving brother of the decedent, and the others entitled in re-

mainder, filed a petition for a citation to show cause why the widow as executrix should not file a complete account of the assets of the estate; why security should not be entered by her as life tenant to protect the interest of the remaindermen under the will; why a stock dividend of the Wilkes-Barre Record Company should not be proportioned between principal and income and why the executrix should not be restrained from disposing of any of the assets pending the termination of the proceedings. A citation issued as prayed for and a restraining order was entered. The restraining order was later terminated when the widow filed separate bonds as life tenant and executrix. The ultimate bond filed by her as life tenant was in the amount of $73,000, with approved surety. Pursuant to order of court, the widow filed her accounts as executrix and life tenant. As executrix she charged herself with the balance shown by the previous account of $36,391.28, and claimed credit for this sum as a distribution under date of February 26, 1915, to herself as life tenant. In her account as life tenant, she charged herself with this sum and claimed no credits.

Exceptions were filed to the accounts. At the hearing on the exceptions, the remaindermen offered to prove that 490 shares of stock of the Wilkes-Barre Record Company were still unconverted, and in the hands of the executrix, and that the balance in the account was not cash as shown but was stock of the Wilkes-Barre Record Company. These offers were refused. The exceptions were dismissed and the account confirmed absolutely. Abner Powell has appealed. Owing to the death of Judge HELLER, the hearing judge, no opinion was filed by the court below.

Appellant contends that, if the court below had permitted, he could have shown that the widow as executrix had in her possession, undistributed, 490 shares of stock of the Wilkes-Barre Record Company. It is contended that having these assets in her possession, it was her

duty to account for them in kind at their present value, and being a nonresident, that she should file a bond to the full amount thereof, and that before turning them over to herself as life tenant, she should post bond as life tenant for the present value of the stock. It is claimed that the bonds already given are inadequate in view of today's value.

At the outset of discussion, it would seem desirable to get rid of any consideration of the remaindermen's right to demand from the widow an account of income. They have nothing to do with the income whatever. By the will, it was given to her for life "to use and expend all of the income of said estate as she may desire."

As to the 490 shares of stock and any other principal assets of the estate which came into the hands of the executrix at her husband's death, they were given to her for life "to use, convert and expend so much of the principal of said estate as she may find necessary in order to provide her a comfortable and satisfactory support." Under this language, she is the sole judge of the necessity to convert and expend principal and of what is a comfortable and satisfactory support. All that the remaindermen have an interest in is what "may then remain" at the death of the widow, and what "may then remain" is not the 490 shares of stock or any other particular asset of the estate, but what may remain of the sum of $36,391.28, which was distributed to the widow by the audit of February 26, 1915. The reason for this is that, under all our authorities, she, as life tenant, was entitled to take the balance as shown by the account and assume a debtor creditor relation to the remaindermen for that sum less any part she should consume. Her relation to them and the property is not that of trustee of it, but is that of debtor for the fund named, which was adjudicated and distributed to her by the court's decree twenty-four years ago. She is responsible to them only for the value of the estate at the date of distribution thereof: *Reiff's Appeal,* 124 Pa. 145, 16 A.

636; *Letterle's Est.*, 248 Pa. 95, 93 A. 935; *Weir's Est.*, 251 Pa. 499, 96 A. 1086; *Kirkpatrick's Est.*, 284 Pa. 583, 131 A. 361. In *Gillett's Est.*, 130 Pa. Superior Ct. 309, 319, 197 A. 517, it is said (KELLER, P. J.) : "Where a life tenant takes over personal property to use the same during her lifetime pursuant to a will, the result is: 'In effect to make the sum thus received . . . a part of her individual estate. It could be invested by her in the purchase of real estate, embarked in mercantile adventures, or stock speculations, or expended in her living and family expenses as she deemed advisable. The money became essentially her own; and she was simply a debtor, to the parties ultimately entitled at her death, whose claim is now payable out of her estate, and, in the event of its insolvency, by her sureties upon the bond given by her as legatee for life.' "

Appellant, while recognizing the rule in these cases, contends that it is of no application here, because: (1) no distribution to the widow as life tenant was ever in fact made, and (2) the widow gave no bond to secure the remaindermen until compelled to do so by court order.

In 1915, when the final account of the executrix was audited, the balance shown for distribution was $36,391.28. This the court ordered distributed. Whether in fact distribution was ever made is immaterial. This was the decree that fixed the rights of the parties. Under it the widow became entitled to the remaining assets in the estate as her individual property and became indebted to the remaindermen to the extent of $36,391.28. The fact that the stock was not transferred on the books of the company to her at that time is unimportant. She could have it transferred at any time. Her failure to do so cannot alter the rights of the parties.

The fact that she filed no bond at the time of the decree of distribution is likewise immaterial. The failure to give a bond as required by the Act of May 17, 1871, P. L. 269, does not alter the rights of the life tenant

and remaindermen. A life tenant who takes possession of the assets without giving bond is not a trustee for the remaindermen but is a debtor to them the same as if she had given a bond: *Gillett's Est.,* supra; *Strawbridge's Est.,* 14 D. & C. 703, (GEST, J.) ; see also *Kirkpatrick's Est.,* supra. Furthermore, the Act does not apply to a life tenant having the power of consumption of principal. As such life tenant, appellee was under no duty to enter security for the protection of remaindermen: *Heppenstall's Est.,* 144 Pa. 259, 23 A. 860. As was said by Judge BLACK in *Hambright's Appeal,* 2 Gr. 319, 321: "What sort of a bond shall she give? What shall be its penalty and conditions? Any bond that could be devised would limit her discretion, in a way never intended by her husband. He permitted her to decide for herself how much she should spend. If we put her under an obligation to consume none, or only a part, we take away her clear right. He gave to those in remainder nothing, in case she left nothing. If we secure them any particular sum, we award to them what they have no title for. It is argued, that she ought to give bond to use it providently, and to leave at her death, all that she does not need during her life. I repeat, that she alone is to be the judge of her wants. The testator gave her the *full* use of the money. He trusted her, and we must do the same." This would seem by unanswerable logic to dispose of appellant's contention.

In *Watson's Est.,* 241 Pa. 271, 88 A. 433, where the widow had a life estate with the power to consume for support, it was alleged that she was misappropriating the property and diverting it to the support of relatives. The court sent the case back so that inquiry might be made whether she was diverting the property to other purposes and if so to require her to give security. It was there said (p. 280) : "So long as the widow uses the property for her own support she has the unquestioned right to the control and direction of it, and the court can only interfere to protect the remaindermen when the

widow attempts to divert the fund from the purpose for which it was bequeathed her."

The amount for which the widow is responsible to the remaindermen is not more than the sum at which she received the property in 1915, $36,391.28. She is not liable to them for any increase in the value of the Wilkes-Barre Record stock, if such there be: *Kirkpatrick's Est.*, 284 Pa. 583, 131 A. 361, and cases there cited.

Decree of the court below dismissing exceptions affirmed at appellant's cost.