## Dickson Estate.

Argued April 28, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*J. Webster Jones,* for appellant.

*Philip A. Bregy,* with him *John E. Stevenson,* and *MacCoy, Evans & Lewis,* for appellees.

OPINION BY MR. JUSTICE BELL, July 2, 1959:

Samuel Dickson, the testator, died May 28, 1915, leaving by his will his residuary estate in trust to pay one-half the income to his son, Arthur G. Dickson, for his life, and after his death "to assign and transfer one-half of the principal of my estate to the children and issue, if any, of my said son, Arthur G. Dickson, absolutely . . . and if there shall be no children [or issue] of my said son . . . living at the time of his death then to assign and transfer [this] share of my said estate . . . to the nieces of my late wife living at the time of my death."

The life tenant, Arthur G. Dickson, died on March 17, 1957. Samuel Dickson's testamentary trustees thereafter filed a final account, at the audit of which Ar-

thur's executor claimed that his estate was entitled to part of the principal by virtue of an intestacy which occurred because five of the seven nieces of testator's wife who survived the testator predeceased Arthur. The Orphans' Court dismissed this claim, and correctly held (1) that all seven nieces of testator's wife who were living at the death of the testator were entitled to take under his will; (2) that there is no intestacy; and (3) that in any event Arthur's executor had no interest in the estate because of Arthur's bankruptcy proceeding in 1932.

In *Dickson's Estate,* 378 Pa. 48, 105 A. 2d 156, Arthur G. Dickson claimed at the audit of the Fourth Account of the trustees under the will of Samuel Dickson, his father, that he was entitled to four-sevenths of the principal of the trust because an intestacy arose by virtue of a combination of two facts—(1) at 79 years of age and in his physical condition he was unable to have any children or issue, and four of the nieces of his father's wife who were living at the time of testator's death had since died. This Court dismissed these contentions and said, inter alia, (pages 49, 51) : ". . . Dickson no longer has a life estate. . . .

"Dickson went into bankruptcy in 1932. The trustee in bankruptcy sold at public auction all the right, title and interest of the bankrupt under the will of his father, Samuel Dickson, including his life estate in the net income therefrom. . . . Suffice it to say that even if . . . Arthur G. Dickson was incapable of having children because of his age and his physical condition, it would not cause an intestacy in this case; since the gift to the nieces living at testator's death was contingent: [citing cases] ; but transmissible: [citing cases and text authorities]."

Samuel Dickson's testamentary gift of half the principal of his estate, after the death of his son, Arthur,

374

without children or issue, "to the nieces of my late wife living at the time of my death" was clear as crystal, and gave such nieces who were living at the time of testator's death a contingent interest which became vested when Arthur died without children or issue.

The executor of Arthur's estate seeks to establish an intestacy in five-sevenths of the principal of his father's trust by applying the so-called "Pay and Divide" Rule. Whatever may have been the justification for the origin of this judicially created technical Rule, it has vanished, leaving in its wake a welter of conflict and confusion. See: *Newlin Estate,* 367 Pa. 527, 536, 80 A. 2d 819; *Rickenbach Estate,* 348 Pa. 121, 125, 34 A. 2d 527; *Hood's Estate,* 323 Pa. 253, 259, 186 A. 740; *Alburger's Estate (No. 2),* 274 Pa. 15, 18, 117 A. 452. Moved by the experience of the past and a desire to eliminate confusion for the future, the "Pay and Divide" Rule is henceforth to be taken as abolished.

Decree affirmed, each party to pay his and their respective costs.