## Derham Estate.

Argued January 16, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Littleton W. Roberts, Jr.,* with him *Harold D. Greenwell,* and *Greenwell, Porter, Smaltz & Royal,* for appellant.

*John J. Lombard, Jr.,* with him *Richard V. Zug, David F. Maxwell,* and *Obermayer, Rebmann, Maxwell & Hippel,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, November 11, 1969:

The basic question in this case is *when* the principal vested.

At the audit of the third and final trustee's account in the Estate of Christina M. Derham, Helen M. Derham, the widow of Philip A. Derham, who was a deceased son of the testatrix, filed a claim for a one-

fifth interest in the principal and income of the trust. The balance of principal for distribution, arising from the sale of real estate, was $142,000. The Orphans' Court rejected Helen's claim, and from its final Decree she took this appeal.

Christina M. Derham died February 16, *1945*, leaving a will dated April 4, *1935*. She had six sons who were living when she made her will: two predeceased her, (1) Walter Derham, who left no children, and (2) John F. Derham, who left two sons, James Joseph Derham and John Francis Derham, both of whom are still living. Testatrix's sons (3) Enos J. Derham and (4) Paul Derham are still living; testatrix's son (5) James P. Derham (who was her executor and trustee) died in 1956 without children or issue; and her other son (6) Philip A. Derham, who was claimant's husband, died in 1962, leaving no children or issue. Helen, the claimant, is the sole beneficiary of Philip A. Derham's estate.

The pertinent provisions of testatrix's unusual will are as follows:

"FIRST: I . . . appoint my son, James P. Derham, to be the Executor and Trustee of this my last will . . . and if, for any reason, he is unable so to act because of death or otherwise, I . . . appoint The Bryn Mawr Trust Company, of Bryn Mawr, Pa., to be his succeeding Executor and Trustee, granting unto it *the same power and authority** as I have herein vested in my said son, James P. Derham.

"SIXTH: I give, devise and bequeath all of my real estate unto my Executor and Trustee in trust, nevertheless, upon the following terms and conditions, and for the uses and purposes hereinafter set forth, to wit:

"In his absolute and uncontrolled discretion and judgment to retain, hold, lease, rent, mortgage, en-

---

* Italics throughout, ours, unless otherwise indicated.

cumber, sell or otherwise dispose of any or all of my said real estate without incurring any personal liability in so doing, and from any income or proceeds derived therefrom *to retain whatever funds he deems necessary or desirable for the protection of said real estate or any part thereof, and to distribute the balance thereof among my six sons*, viz., James P. Derham, Philip A. Derham, John F. Derham, Enos J. Derham, Walter Derham and Paul Derham, in equal shares, the child or children of a deceased son to take the share his, her or their parent would have taken if living, and, if any of my said sons should die without leaving children him surviving, then and [sic] I order and direct that his share shall be distributed equally among my surviving sons, or their children. I order and direct that all of my real estate shall be sold within twenty-one (21) years from the date of the death of the last of my six sons who may survive me, . . .

"SEVENTH: All the rest, residue and remainder of my estate, personal and mixed, of every kind and character, and wheresoever situated, . . . I give and bequeath unto my six sons, viz., James P. Derham, Philip A. Derham, John P. Derham, Enos Derham, Walter Derham and Paul Derham, in equal shares, the child or children of a deceased son to take the share that his, her or their parent would have taken if living, And, if any of my said sons should die without leaving children him surviving, then I order and direct that his share shall be distributed equally among my surviving sons, or their children.

"TENTH: If the Derham Custom Body Company is occupying its present factory at Rosemont, Pennsylvania, at the time of my decease, I order and direct my Executor and Trustee to lease said factory building to said Derham Custom Body Company for a period of three (3) years (or a lesser period if the said

Body Company so desire) from the date of my death at the same rental which said Body Company is paying at said **date.**"

The present trustee's account was filed because of the sale of the last remaining parcels of testatrix's real estate. In interpreting Item SIXTH, the Orphans' Court concluded that those entitled to take under the trust are the testatrix's sons who were *living at the time of distribution* and *the then surviving children, per stirpes, of her deceased sons.*

Claimant (Helen) contends that the interest of her deceased husband Philip vested in his mother's estate at the time of her death in 1945,* and as Philip's sole (testamentary) beneficiary, his interest in both the income and principal is now distributable to her.

We recently said in *Carter Estate,* 435 Pa. 492, 257 A. 2d 843, 845 (pages 496-97): "The law and the legal principles governing the interpretation of wills is well settled, but their application to poorly or ambiguously drawn wills (especially to holographic wills and lengthy testamentary trusts) is often difficult. The pertinent principles may be thus briefly summarized: A testator's intent, unless unlawful, shall prevail; that intent shall be ascertained from a consideration of (a) all the language contained in his will, and (b) his scheme of distribution, and (c) the circumstances surrounding him at the time he made his will, and (d) the existing facts; and (e) canons of construction will be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain. Houston Estate, 414 Pa. 579, 201 A. 2d 592; Burleigh Estate, 405 Pa. 373, 175 A. 2d 838; Dinkey Estate, 403 Pa. 179, 168 A. 2d 337;

---

* Helen's claim is for one-fifth of the trust balance. Under her theory the executor or testamentary beneficiaries of testatrix's son, James P. Derham, who died in 1956 without issue, would also be entitled to share in the distribution.

Pruner Estate, 400 Pa. 629, 162 A. 2d 626; Wanamaker Estate, 399 Pa. 274, 159 A. 2d 201; Hope Estate, 398 Pa. 470, 159 A. 2d 197; Lewis Estate, 407 Pa. 518, 520, 180 A. 2d 919. See also, Benedum Estate, 427 Pa. 408, 235 A. 2d 129."

Both appellant and appellee recognize the above-mentioned legal principles but appellant contends that there was an absolute vesting at the date of testatrix's death, with only the time of distribution postponed. In order to support this contention, appellant relies upon (1) the fact that the will was drawn when real estate was in the depths of the depression; (2) the general scheme of the will, and particularly the language of the residuary clause which gave a vested interest to her children, etc., who were living at her death; (3) the law favors an early vesting in the absence of a contrary-expressed intent; (4) the distribution and, therefore, the gift of principal of the testamentary real estate trust was to testatrix's children and his deceased children's children, and not to his issue, and consequently there might be no takers alive if vested interests were postponed until the time of distribution; (5) the grant of the timing of distribution and the absolute discretion of sale which was given to her executor-son who might die at any time shows that testatrix must have intended an early vesting; (6) a late vesting interpretation would clothe the son-trustee with the power to effectively disinherit testatrix's other sons by delaying a sale of the real estate and the distribution of its proceeds; (7) Court decisions in prior will cases. (We note parenthetically that a similar contention to No. 7 is made by appellee.)

While the law favors vesting* above contingent estates, there is obviously no merit whatsoever in the

---

* Whether a gift is contingent, or vested, or vested subject to be divested, has perplexed or vexed the Courts for centuries. See

No. 5 and No. 6 contentions of appellant, that the grant of the timing and discretion of the sale of the real estate and the distribution of the balance of proceeds thereof to her son shows she intended an early vesting, because all the powers that the testatrix gave her son as trustee to sell any or all of her real estate and to distribute the balance thereof at any time in his absolute and uncontrolled discretion and judgment, she likewise gave to her successor-trustee, the Bryn Mawr Trust Company.

Testatrix's executor-son died in 1956, and thereafter the Bryn Mawr Trust Company was sole trustee until the termination of the trust in 1967, with the absolute power to determine in its uncontrolled discretion and judgment the date and terms of sale of any or all of her real estate, as well as *the time and the amount of distribution* of the proceeds therefrom.

Appellee contends that the language and scheme of the SIXTH item of the will clearly shows the intent of the testatrix to have the proceeds of sales of the real estate distributed to those of her sons *who were living at the time of the sale,* and to the then living children of her sons per stirpes who were deceased, and not to strangers to her blood. Appellee also relies upon a number of prior decisions of this Court and especially upon *Dinkey Estate,* 403 Pa., supra.

While *Dinkey Estate* is stronger in appellee's favor than in appellant's, we do not consider it controlling.

Appellee also contends, in the alternative, that if the intention of the testatrix is not clear, then the "Pay and Divide" Rule will govern, and under that Rule the interest of appellant's husband was contingent and was lost by his death prior to the sale of the real estate.

Testatrix died February 16, 1945 leaving a will dated April 4, 1935 and a nonrelevant codicil dated

particularly *Houston Estate,* 414 Pa. 579, 589-595, 201 A. 2d 592; *Newlin Estate,* 367 Pa. 527, 80 A. 2d 819.

July 1, 1940. If the "Pay and Divide" Rule applies— it was abolished prospectively in 1959 in *Dickson Estate,* 396 Pa. 371, 152 A. 2d 680,*—it was in effect both at the date of testatrix's will and the date of her death and would support the appellee's construction of the will.

Appellee also contends that appellant is estopped from claiming a share of the principal of the balance of the trust real estate which is now before the Court for accounting, because an account had been filed in 1958 after a sale of certain real estate and Philip A. Derham had acquiesced in the distribution thereof, contrary to appellant's present interpretation and position. However, estoppel will not apply because the prior adjudication was based upon an agreement of the parties merely as to those funds and not on a Court decision on the merits.

To summarize: In our judgment, (1) no canon of construction is applicable to the particular facts and the scheme and language of this will; (2) it is unnecessary to invoke or apply the Pay and Divide Rule; and (3) no prior decision of this Court controls its interpretation—it is rare that any will has a twin brother. While the time of vesting is not specifically set forth in this trust, we believe that item SIXTH, and particularly its scheme of sale and retention by the trustee of the proceeds of sale and the distribution of an indefinite balance determinable from time to time in the trustee's sole discretion, shows an intention on

---

* The confusing and highly controversial "Pay and Divide" Rule, with its irreconcilable applications in many prior decisions of this Court, has been stated in several ways. Perhaps it is best stated in Hunter, Orphans' Court Commonplace Book, Vested and Contingent Interests, Section 12a: "Where a gift in remainder is not direct, such as one in the words 'I give and devise', but is only implied from a direction to the executor or trustee to 'pay', 'divide', 'distribute', etc., it is contingent: [citing cases]."

the part of the testatrix to give the principal to her children and the living children of her deceased children who were living at the date of the determined distribution of the proceeds of a sale. At this date, determined by the trustee without chicanery or fraud, the balance of the proceeds of real estate sales would be distributed to those of testatrix's sons who were then living and to the then living child or children per stirpes of her deceased son, and, in the absence thereof, to testatrix's then living sons and their then living children per stirpes.

For these reasons, we hold that appellant's husband, who died in 1962 without children or issue, did not have a vested interest in the proceeds of sale of real estate herein accounted for, and his wife, who is the present appellant, is not entitled to any part or share of the said principal or income.

Decrees affirmed, costs to be paid out of the trust estate.