## Linn Estate.

Argued April 25, 1969.  Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Frank W. Ittel,* with him *Reed, Smith, Shaw & Mc-Clay,* for remaindermen.

*Walter J. Wagner,* for executors of deceased executor.

OPINION BY MR. JUSTICE JONES, November 11, 1969:

Stella S. Linn (decedent) died in 1958 leaving a will dated February 27, 1942.

As presently pertinent, that will provided: "Second: I give, devise and bequeath all my estate, real, personal and mixed, not required for the payment of my debts aforesaid, to my husband, Jacob C. Linn, if he shall survive me, to take, hold, control and use the same for and during the term of his natural life, and during said term to use and expend all of the income from said estate as he may desire, and further to use, convert and expend so much of the principal of said estate as he may find necessary in order to provide him a comfortable and satisfactory support. . . . Fifth: Upon the decease of my said husband and after payment of the Five Thousand ($5,000.00) Dollars, aforesaid, I give, devise and bequeath my estate, real, personal and mixed, which may then remain, to the children of my deceased brother, Albert Schinneller, namely, George C. Schinneller, Jean L. Schinneller and Marjorie D. Schinneller, to be divided among them share and share alike."[1]

On December 30, 1959, after audit of the account, the balance of testatrix's estate was awarded to her husband, Jacob C. Linn (life tenant). The relevant portion of the decree of distribution awarded testa-

---

[1] The latter are the appellants in No. 111 March Term 1969.

trix's estate to the life tenant "for and during the term of his natural life, with power to consume, and at his death and after payment of $5,000 as provided in Paragraph Fourth of decedent's will, remainder" (to certain persons named in the will). The balance of the estate so awarded consisted of marketable securities and cash totalling, $81,351.18.

The life tenant died in 1964 leaving a will and codicil dated October 12, 1960. The pertinent portion of the codicil provides as follows: "SIXTH: I hereby nominate, constitute and appoint my brother, CARL LINN, and my good friend, FRED M. AMMAN, SR., or the survivor or successor of them in the capacity of Executors of my Last Will and Testament dated October 12th, 1960, to make the necessary accounting after the date of my death in accordance with the provisions in the last Will and Testament of my wife, STELLA S. LINN, . . . and under which I, JACOB C. LINN, was designated Executor, with said Will being silent as to whom shall make final distribution of the STELLA S. LINN ESTATE after termination of my life interest therein."

The life tenant's surviving executor (appellant in No. 112 March Term 1969) filed an account but did not include therein the assets which remained of testatrix's estate at the time of the life tenant's death. The remaindermen named in testatrix's will petitioned the Orphans' Court of Allegheny County to require the executor of the life tenant's estate to account for that which remained of testatrix's estate at the time of the life tenant's death and the court required such an accounting. Upon filing of that account, the remaindermen under testatrix's will excepted upon the grounds that the remaining assets received from testatrix's estate by the life tenant were accounted for as the life tenant's individual property.

Initially, the court below was asked to determine the nature of the life estate, i.e., whether it was a legal or equitable life estate and the court held that the estate was equitable in nature and that the life tenant during his lifetime occupied the status of trustee to the remaindermen.

The court then passed upon the other exceptions filed by the remaindermen which were three-fold: (1) that the accountant, while accounting for those securities which had been liquidated, failed to account for the proceeds of such liquidation on the basis that they had been "consumed by the life tenant"; (2) that the accountant did not account for the cash received by the life tenant under the decree of distribution; (3) that the accountant had failed to account for "certain stock rights" which were issued during the lifetime of the life tenant. The court ruled that, while it was the accountant's duty to account for that which the life tenant received under testatrix's will, nevertheless, it was the remaindermen's burden to show that the life tenant had not consumed these assets during his lifetime, and, if the life tenant had so consumed the assets, such consumption *per se* did not amount to a breach of trust. The court further held that the remaindermen had failed to sustain their burden of proof and that the distribution of securities valued at $53,329.50 and of cash totalling $9,770.21 should be suspended pending final determination of the estate tax liabilities of the life tenant's estate.[2]

---

[2] The United States government had assessed an estate tax deficiency of approximately $32,000 against the estate of the life tenant. Such deficiency was based on the theory that the life tenant was given a general power of consumption under testatrix's estate and, if the life tenant be considered a trustee, his estate would be liable for federal estate taxes. The soundness of this theory we are not called upon to decide or determine.

From the decree of the court below two separate appeals are before us: (a) an appeal by testatrix's remaindermen from that portion of the decree which sustained the life tenant's executor's posture that he did not have to account for that portion of the life estate which it was claimed had been consumed and the manner of such consumption; (b) an appeal by the life tenant's executor on the ground that the relationship between the life tenant and the remaindermen was not that of trustee to *cestui que trustent* but rather that of a debtor to creditors under the holding of this Court in *Powell Estate,* 340 Pa. 404, 17 A. 2d 391 (1941).

Several issues are raised by these appeals. First, should this Court apply the law in effect as of the date of testatrix's will (February 27, 1942) or the law in effect as of the date of death of testatrix (October 18, 1958)? That the law at the respective times was different is evident. In *Powell Estate,* supra, where there was a bequest for life with the right during said term to use and expend all of the income from said estate "as [the life tenant] may desire, and further to use, convert and expend so much of the principal of said estate as she may find necessary in order to provide her a comfortable and satisfactory support", we held that the relationship of the life tenant to the remaindermen was that of debtor for the fund and that the life tenant was responsible to the remaindermen only for the value of the estate at the time of distribution and not for any increase in the value of the fund thereafter, the result being to make the sum received by the life tenant a part of the life tenant's individual estate. Had the ruling in *Powell Estate* remained undisturbed there would be no doubt as to the soundness of the position taken by the life tenant's executor on his appeal. However, the Estates Act of 1947 (April 24, 1947, P. L.

100, §13, 20 P.S. §301.13) provides in pertinent part: "A person having a present interest in personal property, or in the proceeds of the conversion of real estate, which is not in trust, and which is subject to a future interest, shall be deemed to be a trustee of such property, and not a debtor to the remainderman, with the ordinary powers and duties of a trustee [with several exceptions not presently pertinent]." Although this statute changed the basic ruling in *Powell Estate* it did not alter the ruling in *Powell Estate* that the life tenant was not required to give security if the life tenant had been given a power of consumption or was excused therefrom.

The instant problem is whether *Powell Estate* or the Act of 1947 governs in the factual posture of this case. We are of the view that the law as of the date of testatrix's death must control the construction of her will. The Wills Act of 1917 (Act of June 7, 1917, P. L. 403, §9, 20 P.S. §221) provides: "Every will shall be construed, with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will." The Wills Act of 1947 (Act of April 24, 1947, P. L. 89, §14, 20 P.S. §180.14) provides that, in the absence of a contrary intention appearing therein, wills shall be construed in accordance with the following rules: "(1) Wills construed as if executed immediately before death. Every will shall be construed, with reference to the testator's real and personal estate, to speak and take effect as if it had been executed immediately before the death of the testator." In *Lusk's Estate*, 336 Pa. 465, 467, 9 A. 2d 363 (1939), we held that a testatrix is presumed to have known that the law provides that "his [her] will would speak as of his [her] death". In the absence of any contrary intent shown in the in-

stant will, we conclude that the law which governs the construction of her will is the law in effect when she died and that the instant life tenant occupied the status of a trustee to the remaindermen under testatrix's will.

Our next question is whether the accretions, such as stock rights to the corpus must be distributed to the remaindermen or to the heirs of the life tenant. We are of the opinion that the increase in value of the corpus since October 18, 1958 (the date of testatrix' death), as well as the corpus itself should be distributed to the remaindermen. The Estates Act of 1947, applicable as of January 1, 1948, must govern the distribution of this estate. The life tenant held the corpus of that which he received from testatrix's estate as a trustee for the remaindermen and the remaindermen are now entitled to the corpus plus any increase in the value of the corpus less any amount lawfully consumed by the life tenant-trustee. In *Gramm Estate*, 420 Pa. 510, 517, 218 A. 2d 342 (1966), we said: "The impact of this statutory provision is that: (1) since January 1, 1948—the effective date of this statute—legal future estates cannot be created in personalty and all such estates are now treated as trusts with the life tenant, or another person appointed in his stead by the court, acting in the capacity of trustee; (2) the life tenant is now subjected to all the rights and duties of a trustee except as provided otherwise by the statute; (3) the life tenant or his estate must account for the value of the estate coming into his possession together with any increase in value during the period of the trust." The corpus of testatrix' estate with any increase in its value since October 1958 must, under the Estates Act of 1947, supra, be distributed to the remaindermen under testatrix's will.

Next, is the estate of the life tenant required to account for the sums the life tenant received as cash

and in liquidation of certain stock during his lifetime? We are of the view that it is not so required. This question involves an invasion of the corpus by the life tenant, an invasion authorized under testatrix's will which authorized consumption "in order to provide [the life tenant] a comfortable and satisfactory support". In their contention in this respect, the remaindermen seek to surcharge the estate of the life tenant on the ground that he had committed a breach of trust. In *Bard's Estate*, 339 Pa. 433, 437, 13 A. 2d 711 (1940), we said: "Those who seek to surcharge a fiduciary for a breach of trust must bear the burden of proving the particulars of his wrongful conduct." Under certain circumstances, such as "a glaring error in overpayment of taxes [by more than $17,200]" the burden may shift to the fiduciary to show that he used "common sense, prudence and due care under the circumstances". See: *Maurice Estate*, 433 Pa. 103, 108, 249 A. 2d 334 (1969). However, in the absence of such circumstances, the burden remains with those who seek "to surcharge a fiduciary for breach of trust". See: *Maurice Estate*, supra, at p. 107. The court below found no evidence of any improper conduct on the part of the life tenant and, therefore, the burden was on the remaindermen to prove that the life tenant had breached his trust. The remaindermen have failed to sustain that burden of proof and, as the record stands, we must find that the sums with which the estate of the life tenant is sought to be charged were properly used by the life tenant for his maintenance and support.

The next question is whether the estate of the life tenant must account for his lifetime exercise of certain subscriptive rights to purchase A. T. & T. stock. These rights constituted principal. The Principal and Income Act of 1947, 20 P.S. §3470.5 (2) provides:

"All rights to subscribe to the shares or other securities or obligations of a corporation, accruing on account of the ownership of shares or other securities in such corporation, and the proceeds of any sale of such rights shall be deemed principal." The only limitation placed by the testatrix's will on the conversion of these rights was that such conversion be only for the "support" of the life tenant and any other use would constitute a breach of fiduciary duty for which the estate of the life tenant-trustee would have to account. See: *Gramm Estate,* supra, at pp. 519-21.

An examination of the record indicates that, according to the schedule of distribution as incorporated in the lower court's decree of February 26, 1968, there are now 414 shares of A. T. & T. stock available for distribution. The number of these shares reflects the 207 shares held by Jacob C. Linn, life tenant and 207 additional shares obtained by virtue of the two for one stock split on June 22, 1964. If the subscriptive rights had been properly exercised in favor of the trust fund, there would now be 454 shares of A. T. & T. stock available for distribution, plus approximately $50 from sales of "odd rights".[3]

In order to charge the life tenant-trustee with a breach of his trust there must be *proof* of improper conduct on his part. See: *Bard's Estate,* supra, at p. 437; *Maurice Estate,* supra, at p. 107. The only evi-

---

[3] The basis on which we calculated the amount as 454 shares of A. T. & T. stock is as follows: On February 23, 1961, life tenant had 207 shares at which time he could and possibly should have bought 10 shares at $86 and should have sold 7 rights at $1.484375 to yield cash of $10.39. Had the life tenant done so, on March 18, 1964, he would have had 217 shares and could and possibly should have bought 10 shares at $100 and sold 17 rights at $2.078125 to yield cash of $35.33. Thus on June 22, 1964, he would have had 227 shares of the 2 for 1 stock split which would have yielded 454 shares.

dence of record concerning the exercise of the A. T. & T. subscriptive rights reveals the following: (a) on March 22, 1961, 17 shares were purchased for Carl Linn at $86; (b) on March 18, 1964, 2 shares were purchased for Carl Linn at $100; (c) on March 18, 1964, 7 shares were purchased for the life tenant at $100 and (d) on March 18, 1964, 11 shares were purchased "in Stella's [the testatrix] name" at $100. Our examination of the record reveals the questionable probative value of the above evidence and the lack of any confirming evidence and we cannot find that the lower court in the instant record abused its discretion in refusing to find a breach of duty with respect to the "subscriptive rights" to the A. T. & T. stock. We conclude on the state of this record that the estate of the life tenant need not account for the A. T. & T. rights.

We are further convinced from the record that the estate of the life tenant need not give any further accounting for the alleged consumption by the life tenant of certain shares of stock of Plymouth Oil Company and of Argo Oil Company. For the reasons given we are satisfied that the decree of the court below was proper.

Decree affirmed. Estate to pay costs.