Jessup Estate.

Argued April 23, 1970. Before BELL, C. J., COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*J. Peter Williams,* with him *J. Freedley Hunsicker,* and *Drinker, Biddle & Reath,* for appellants.

*William H. S. Wells,* with him *Guy T. Moore,* and *Saul, Ewing, Remick & Saul,* for appellees.

OPINION BY MR. CHIEF JUSTICE BELL, October 9, 1970:

The question involved is whether the gift of the remainder in the trust for Jenny vested at the death of the testator or at the death of Jenny.

The question of whether a bequest or devise created a vested interest (or a vested subject-to-be-divested interest), or a contingent interest has perplexed and vexed the Courts for countless years. This question arises most frequently in wills or trusts which, like the present, use the word "surviving," and particularly when (as here) "surviving" is used in different context in the same will.

The testator, August E. Jessup, died at Livorno, Italy,* on October 16, *1925,* leaving a will dated April 14, *1925.* At the time of his death, he was survived (1) by two sons, Alfred C. Jessup and Alexander M. Jessup, who were children of his marriage to his first wife (Lady Mildred Marion Bowes Lyon), and (2) by two daughters, Mary Jessup Hood and Olive Jessup Howell, who were children of his marriage to his second wife (Hyacinth Mary Cavendish Bentinck), and (3) by his third wife, Jenny. Testator had no children by Jenny. Testator's first two wives predeceased him. Both his sons predeceased Jenny, who had remarried after his death and died on January 14, *1968.* Alexander died in 1931, survived by one son, who died in 1942. Alfred died in 1953, childless. Both of testator's daughters are still living.

---

* Testator had lived abroad almost all his adult life.

At the time of his first marriage, the testator and his first wife executed an Indenture of Marriage Settlement dated June 10, 1890. Among the provisions of this marriage settlement was one which reserved to the testator a power of appointment over certain trust property to any wife or issue he might have. In the Second Paragraph of his will, the testator made specific reference to this reserved power of appointment, and thus provided:

"Now, therefore, I do hereby exercise the power of appointment vested in me under the terms of the said marriage settlement, and from the corpus of the fund held thereunder at my disposal at the time of my death, I *give and bequeath**\** as follows: [$5,000 to each of his children and $5,000 to his wife, free of all taxes.]

"*All the rest, residue and remainder* of the said fund, I give, devise and bequeath unto my Trustees hereinafter named, to divide the same into thirty equal parts or shares, and to *hold the same in Trust,* that is to say:**\*\** Ten (10) of such parts or shares for the benefit of my son Alfred C. Jessup; five (5) shares for the benefit of my son Alexander M. Jessup; five (5) shares for the benefit of my daughter Olive C. L. Jessup; five (5) shares for the benefit of my daughter Mary V. Jessup, and five (5) shares for the benefit of my wife Jenny J. Shaw, *under separate trusts, to pay over the income* therefrom unto my said wife and [my] children by any previous marriage respectively for life. In Trust, upon the death of each child, to assign, transfer, *pay over and divide the principal of such [child's]*

---

\* Italics throughout, ours, unless otherwise noted.

\*\* This will, as we shall see, is a Chinese Puzzle. For this reason, we believe that the occasional insertion of a bracket will be helpful. Since one of the contentions involves the "Pay and Divide" Rule, we note that in the above gifts and in the gifts in the Fifth Paragraph, testator knew how to make an absolute gift; however, he also knew how to make a contingent gift.

*share* to and among his or her children, or the issue of deceased children [if any], share and share alike, per stirpes, upon the principle of representation;

· *"In Trust, upon the death of any child without leaving children or issue him or her surviving, to divide* the share of the child so dying *among the other hereinbefore mentioned beneficiaries* under this my Will in the same proportion as each share bears to the whole, *less the share of the child so dying,* and to *hold the same under the same uses, trusts, contingencies and remainders hereinabove set forth;*

*"And for my wife, in Trust for her life,* and likewise for any ligitimate [sic] issues of my present marriage, *who may attain to twenty-one years of age and obtain a vested interest, And failing either of these contingencies* the said share shall be *equally divided between the hereinbefore mentioned and surviving beneficiaries under this my Will.*

*". . .* [Fifth paragraph—see infra]

"SEVENTH—I desire that any of my children shall possess the right of *willing his or her* share [of income] above mentioned during their lifetime to their wife or husband for life *whether they predecease me or not.* With the exception of my oldest son Alfred C. Jessup who in the event of his dying childless shall *only leave half the life interest* on his major share to his wife the other half to be divided equally *between the surviving beneficiaries under this my will in the event of his having no child or children who live to take a vested interest. Only the children of my children* who shall attain the age of 21 years* *and take a vested interest** *shall be eligible to the benefits of this my will* provided this in no way runs contrary to the Statute of Limitations.

*". . .*

---

* This is certainly confusing, but it indicates testator did not intend to give a vested interest in the remainder at his death. (The Rule against Perpetuities is not presently relevant.)

"FIFTH—All the rest, residue and remainder of my own personal estate, of whatsoever nature and wheresoever situated, I direct shall be divided into thirty equal parts or shares, and those equal parts or shares I *give, devise, and bequeath* ten (10) unto my son Alfred C. Jessup; five (5) unto my son Alexander M. Jessup; five (5) unto my daughter Mary V. Jessup; five (5) unto my daughter Olive C. L. Jessup; and five (5) unto my wife Jenny J. Shaw, *absolutely and in fee;*"

The executors of the estate of each of testator's two deceased sons claim a share of the trust principal set aside for Jenny on the ground that all of the testator's children who survived him took a vested interest at his death,* while testator's two surviving daughters claim

---

*A stipulation of facts entered into by the parties states that if testator's gift is held to be vested, then the trust will be distributed as follows:

Two tenths to Mary Jessup Hood

Two tenths to Olive Jessup Howell

One twentieth to Fernando deMinondo if living; otherwise to his estate

One twentieth to the estate of Miguel deMinondo (The record does not disclose the relationship of Fernando and Miguel deMinondo, but it was stipulated that testator's son Alexander had a wife, Carmen deMinondo, and from whom he had been legally separated since 1927, and that his will dated two years before the separation provides that upon the death of Carmen—who died in 1961 without issue—Alexander's estate was to be distributed equally between Miguel and Fernando deMinondo of San Sebastian, Spain. Miguel died in 1952.)

Two tenths to Wanda Pollidori if living; otherwise to her estate (The stipulation of facts describes Wanda Pollidori as a young Italian girl to whom testator's son Alfred was believed to be engaged at the time of his death and who is the sole beneficiary under his will.)

Two tenths to the surviving sisters of Jenny Shaw Nunes de Sa and issue of any who are deceased (Jenny Shaw Nunes de Sa was testator's third wife, who left her residuary estate to such of her five sisters as might survive her and the issue of any who did not survive her.)

that they are entitled to the entire trust principal, on the ground that testator's gift of the principal was contingent upon surviving Jenny.

The Orphans' Court Division of the Court of Common Pleas of Philadelphia held that the interests of testator's children were vested at his death and the executors of the deceased children, as well as testator's surviving daughters, were entitled to share in the trust principal. Exceptions were filed by testator's daughters. The exceptions were dismissed by a divided Orphans' Court, and this appeal was taken by testator's surviving daughters.

In *Matthews Estate,* 439 Pa. 69, 264 A. 2d 714, the Court said (page 72) : " 'We recently said in Carter Will, 435 Pa. 492, 257 A. 2d 843 (pages 496-497) : "The law and the legal principles governing the interpretation of wills [are] well settled but their application to poorly or ambiguously drawn wills (especially to holographic wills* and lengthy testamentary trusts) is often difficult. The pertinent principles may thus be briefly summarized: A *testator's intent, unless unlawful, shall prevail*; that intent shall be ascertained from a consideration of (a) all the language contained in his will, and (b) his scheme of distribution, and (c) the circumstances surrounding him at the time he made his will,** and (d) the existing facts; and (e) *canons of*

---

If it is held that testator's gift was contingent, the trust principal will be divided equally between his surviving daughters, Mary Jessup Hood and Olive Jessup Howell.

\* Appellants attempted to prove at the hearing that testator had drafted his own will. The hearing Judge ruled, however, that the particular evidence which they offered to prove this fact was inadmissible because it was hearsay. The dissenting Judge noted, however, that "there is evidence in the record which is well-nigh conclusive, however, that the scrivener was not a Pennsylvania lawyer." We believe it is clear that this will was drawn by a lawyer, but it would appear that it was not a Pennsylvania lawyer.

\*\* In the absence of a statute providing a different test: **cf.** *Jaekel Estate,* 424 Pa. 433, 227 A. 2d 851.

*construction will be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain.* Houston Estate, 414 Pa. 579, 201 A. 2d 592; Burleigh Estate, 405 Pa. 373, 175 A. 2d 838; Dinkey Estate, 403 Pa. 179, 168 A. 2d 337; Pruner Estate, 400 Pa. 629, 162 A. 2d 626; Wanamaker Estate, 399 Pa. 274, 159 A. 2d 201; Hope Estate, 398 Pa. 470, 159 A. 2d 197; Lewis Estate, 407 Pa. 518, 520, 180 A. 2d 919. See also, Benedum Estate, 427 Pa. 408, 235 A. 2d 129." ' Derham Will, 435 Pa. 590, 258 A. 2d 650."

All the parties and all the Judges of the Orphans' Court agree with these principles, thereafter they part.

Opinions of the Orphans' Court

The majority of the Orphans' Court held that testator's intent was not clear from the language of his will and therefore it was necessary to resort to the canons of construction. Administrative Judge KLEIN (joined in by Judge BOLGER), relying on the principles enunciated in *Newlin Estate,* 367 Pa. 527, 534, 80 A. 2d 819, as modified by *Houston Estate,* 414 Pa. 579, 201 A. 2d 592, held that the interest of all of testator's children who survived him were vested at his death. The pertinent principles enunciated in said cases are: If it is not clear from the language of the will whether the remainder is vested or contingent, then ". . . The law leans to vested rather than to contingent estates, and the presumption is that a legacy is vested (citing cases) . . .

"The intention of a testator or settlor to create a contingent interest must appear *clearly and plainly,* otherwise the interest will be construed to be vested, or vested subject to be divested." (*Houston Estate,* 414 Pa., supra, 594.)

Judge KLEIN concluded: "If anything is clear in the present case, it is that it does not appear *clearly and plainly* that the testator intended to create a contingent interest. We therefore agree . . . that the interests of testator's four children, all of whom survived him, are vested."

Judge LEFEVER (joined in by Judges SAYLOR and BURKE) *concurred in the result,** and concluded that

---

\* Judge LEFEVER further said: "Concededly . . . the 'pay and divide' rule produced 'a welter of conflicting confusion' and in many instances produced anomalous results. Nonetheless, it was a true counterweight to the equally harsh, unrealistic and anomalous rule that a gift must be presumed to be vested unless the intention of testator or settlor to create a contingent interest was clear and plain. Consequently, the abrogation of the 'pay and divide' rule in 1959 has produced results not readily then foreseen. Thus, in many close and doubtful cases which have arisen since 1959 the courts have been compelled to decide that gifts were vested in beneficiaries long since dead, with the accompanying unrealistic results that (1) many estates had to be reopened and distribution made through them, successively; (2) the awards were successively subjected to additional administrative expenses and huge federal estate taxes and Pennsylvania inheritance taxes; and (3) the persons who ultimately received the awards were complete strangers to testator and not in his bloodline. Such unrealistic and unfortunate results will ensue from the decision of the majority in the instant case."

Judge LEFEVER further urged this Court to reexamine the canons for the construction of vested and contingent remainders in the light of the abolition of the counterbalancing "pay and divide" rule and adopt a fairer and more equitable and realistic doctrine, although he did not state what new rule or canon or doctrine he recommended.

In *Dickson Estate*, 396 Pa. 371, we said (page 374): "Whatever may have been the justification for the origin of this judicially created technical Rule, it has vanished, leaving in its wake a welter of conflict and confusion. See: Newlin Estate, 367 Pa. 527, 536, 80 A. 2d 819; Rickenbach Estate, 348 Pa. 121, 125, 34 A. 2d 527; Hood's Estate, 323 Pa. 253, 259, 186 A. 740; Alburger's Estate (No. 2), 274 Pa. 15, 18, 117 A. 452. Moved by the experience of the past and a desire to eliminate confusion for the future, the 'Pay and Divide' Rule is henceforth to be taken as abolished." Fur-

the principles enunciated by this Court required a holding (as Judge KLEIN did) that the interests were vested at the death of the testator, even though it brought about unrealistic and inequitable results.

Finally, Judge SHOYER dissented on the grounds, inter alia, (1) that a careful examination of the *entire will* shows that the testator *intended* to create contingent rather than vested gifts, and (2) that this was likewise evident from several expressions in the will, some of which clearly indicated that the gift was intended to be contingent.

We interpolate to point out that the word "surviving" and the words *"above mentioned beneficiaries,"* and "above mentioned and surviving beneficiaries," and the *confusing contingency statement* in the last summarizing sentence in the Seventh Paragraph make the interpretation of the testator's meaning and intent exceedingly difficult.

## Appellants' Contentions

Appellants contend, inter alia, that it is clear from the will *read as a whole and from the scheme of distribution* that testator intended *to give a contingent remainder to his beneficiaries who were surviving at the time this particular trust for Jenny was terminated.* In support of this contention, appellants point to the trusts created by the testator for his children where *the gifts of principal upon the death of each child are limited to living descendants of his bloodline,* viz., either their children or issue of deceased children or their brothers and sisters.

───────

thermore, shortly after the decision of the Orphans' Court in this case, this Court, in *Hope Estate*, 398 Pa. 470, 159 A. 2d 197, and in *McKinney Estate*, 435 Pa. 608, 258 A. 2d 632, specifically declared that *the rule would no longer be applied.*

Moreover, as support for their contention of a contingent gift, appellants point to the Seventh Paragraph of the will, where the testator gave the other half of Alfred's trust "to be divided equally between the surviving beneficiaries under this my will in the event of his having no child or children who live to take a vested interest. *Only the children of my children who shall attain the age of 21 years and take a vested interest* shall be eligible to the benefits of this my will . . ." They further contend (a) that the reasons for the rule or presumption of vesting at testator's death are not present in this case, and therefore the rule or presumption should not apply, and (b) more importantly, the language of the gift of the remainder after Alfred's death clearly created contingent remainders. They also contend that the law which governs the construction of a will is the law in effect when the testator died, unless the will contains a clearly expressed contention to the contrary. Cf. *Houston Estate*, 414 Pa., supra; *Linn Estate*, 435 Pa. 598, 605, 258 A. 2d 645; Wills Act of 1947, Act of April 24, 1947, P. L. 89, Sec. 14, 20 P.S. §180.14, and that at his death his gift would have been construed to be contingent. Lastly, they rely upon a *broad* but erroneous construction of the Act of 1923 and its statutorily created presumption that the "hereinbefore mentioned beneficiaries" would take as "testator's heirs or next of kin" at the time the Jenny trust was terminated.

## Appellees' Contentions

Appellees contend that the testator knew how to create contingent interests clearly and plainly, when he so desired and intended. They likewise correctly contend that the rule of construction applicable to ascertaining the testator's intent is not affected by the "pay

and divide" rule which has been abolished for all purposes, nor by the Act of 1923, P. L. 914, because the language of the Act is inapplicable to the language of testator's will.

None of the parties mentions the fact that the testator knew how to create an absolute and vested gift of principal when he wanted to do so, as, for example, he did in the Fifth Paragraph of his will.

We have read and reread this will many times, as well as the prior decisions of this Court which were cited by the parties in their very able briefs, and likewise many additional decisions of this Court which we thought might be helpful or controlling. We have, of course, considered all of the contentions made by each of the parties. It will suffice to say that a penetrating examination and analysis of testator's will, especially the language of the trust for Jenny in the Second Paragraph thereof, without resort to any canons of construction, leads us to believe that the testator *intended* to give the remainder (principal) of Jenny's trust to his surviving children (daughters) who were living at Jenny's death.

Decree reversed; costs to be borne by the trust.

Mr. Justice EAGEN dissents.

Mr. Justice JONES took no part in the consideration or decision of this case.

___

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I am pleased to concur in the majority's result. I view it as a retreat from the decision of this Court in *Houston Estate*, 414 Pa. 579, 201 A. 2d 592 (1964), and more in accord with the result recommended by the dissent in that case. The outcome of the instant case is a much needed step towards excising from our jurisprudence a small amount of the legal fictions encrusted on our decedents' estates law.

376

The presumption of vesting was counterbalanced over the years by the "pay and divide rule." This counterbalancing effect was destroyed with the proper abolition of that rule in *Dickson Estate*, 396 Pa. 371, 152 A. 2d 680 (1959). Certainly routine use of the presumption should now be avoided. Some scholars have gone so far as to advocate that there be a preference *against* vested interests.* I believe the language of this will supports the majority's result, and I laud the limitation of *Houston*.

CONCURRING OPINION BY MR. JUSTICE POMEROY:

I concur in the decision of the Court. My reasons are in large part those set forth in the opinion of Judge SHOYER, dissenting in the court below.

* E.g., Leach, Property Law Indicted 60-61 (1967).