## Plumly Estate

Before Bolger, Lefever, Saylor, Shoyer and Silverstein, JJ.

*Duffield Ashmead, 3rd,* and *Drinker, Biddle & Reath,* for exceptant.

*Joseph T. Coghlan, Jr.* and *William C. Ferguson, Jr.,* for exceptant.

*Dunstan McNichol,* contra.

*J. Harry Wagner, Jr.,* for life tenants.

*Robert A. Detweiler,* for guardian and trustee ad litem.

LEFEVER, J., November 30, 1970.—This case is before the court on exceptions to the adjudication of Judge Bolger. The pertinent portions of his adjudication follow.

"Eugene K. Plumly died June 23, 1935, leaving a will which was duly probated. By that will he gave his residuary estate to his trustees in trust to pay one-half of the net income therefrom to his wife for life and the other one-half of the income in equal shares to his three children for their respective lives. On the death of the wife her share of income was also payable to testator's three children for life. Upon the death of testator's sons, the income payable to the son so dying was payable to the son's wife for life and upon the death of either son and the wife of that son that share of income was payable to all the children and the issue of such son during the lives of the testator's two grandchildren, Eugene Howard George and Francis L. Plumly, Jr. and the survivor of them; upon the death of testator's daughter, her share of income is to be paid to her children during the lifetime of the testator's aforementioned two grandchildren and the survivor of them and upon

the death of the survivor of the testator's wife, his three children and above named grandchildren the estate is to be divided equally among the testator's then living grandchildren and issue of deceased grandchildren per stirpes or in default of issue then to the University of Pennsylvania.

"This account is filed by reason of the death of Alice W. Plumly, widow of George Plumly, on January 14, 1970 . . .

"When the testator died he left surviving him a wife, two sons, George and Francis, and a daughter, Eugenia. Upon the death of the wife the income was paid to the three children, and upon the death of George the income from his share was paid to his widow, Alice. Eugenia, the daughter, died in 1954 survived by a son, Eugene (one of the measuring lives), who died in 1959. Since his death the share of income payable to Eugenia has been paid to Alice, the widow of George, and to Francis Plumly, the sole surviving child of the testator. Francis Plumly, Jr., testator's grandson and a measuring life, also survives.

"At the audit a question arose as to the proper distribution to be made in this estate by virtue of that part of Article Fifth of testator's will which reads:

'And upon the further trust on the death of any of my children without leaving any child or other issue living at the time of the death of the survivor of my said two grandchildren, Eugene Howard George and Francis L. Plumly, Jr., the share of the said net interests, income, rents and profits which would have been payable to the child so dying, shall be divided, distributed and paid in equal shares to and among my other children who may be living, the issue of such of them as may be deceased taking the same share as their parent would have taken if living, until

the time of the distribution of the principal of my estate as above provided; . . .'

"The Administrator of the Estate of Eugene H. George contends that the will fails to dispose of the share of income payable to a child who dies without issue during the term of the trust, and to avoid such intestacy it would be necessary for the court to supply the words omitted by the testator; something the court is without power to do citing Colin's Estate, 388 Pa. 483.

"The accountant, on the other hand, contends that the court need not supply words of omission nor raise a gift by implication; that the intent of the testator can be garnered from the words that appear even though the syntactical construction of the will leaves something to be desired. If we understand his interpretation of the above clause it is: 'Upon the death of Eugenia without leaving Eugene Howard George surviving at the death of Francis Plumly, Jr., the share of the income payable to Eugenia shall be divided, distributed and paid in equal shares to and among my other children who may be living,' in this case testator's remaining child, Francis Plumly.

"With this interpretation we agree. Eugenia having died without issue before the death of the named grandsons, she will be as dead without issue after their decease. Once issue and ancestor are extinct, issue cannot reappear. Poor language construction or punctuation should not stand in the way of carrying out the testator's intent. The testator did not intend that it was necessary that Eugenia survive the named grandson and then die without issue. We search for testator's intent among his words, and while 'the search is confined to his language, . . . its object is still his meaning': Woelpper's Appeal, 126 Pa. 562. 'When a decedent drafts a last will . . .

he is presumed, in the absence of an indication to the contrary, to have intended to dispose of his entire estate and not to die intestate as to any part of it.' Farrington Will, 422 Pa. 164. The rule to be applied in the interpretation of wills is one that promotes testacy not one to prevent it: Fisher's Estate, 302 Pa. 516. The entire structure of the testator's residuary clause indicates an intent to have the income of his estate paid to his wife, children and their issue and upon the termination of the trust if there are no members of his family surviving to take, it is only then that the testator expresses an intent that his estate shall pass to those outside the family line. Under the circumstances an interpretation that an intestacy resulted would have the effect of passing income to those outside the bloodline and at some later date have the property come back into the family line. From a reading of the entire residuary clause it is highly improbable that the testator intended such a result. Accordingly, we find from the words of the testator that his intention was to confine the benefits of his residuary estate to his children and their issue."

In Carter Estate, 435 Pa. 492, 496 and 497 (1969), the Supreme Court, speaking through Mr. Chief Justice Bell, stated:

"The law and the legal principles governing the interpretation of wills is well settled, but their application to poorly or ambiguously drawn wills (especially to holographic wills and lengthy testamentary trusts) is often difficult. The pertinent principles may be thus briefly summarized: A testator's intent, unless unlawful, shall prevail; that intent shall be ascertained from a consideration of (a) all the language contained in his will, and (b) his scheme of distribution, and (c) the circumstances surrounding him at the time he made his will, and (d) the existing facts;

and (e) canons of construction will be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain."

This doctrine was reaffirmed on October 9, 1970, in Estate of Augustus E. Jessup, January Term, No. 280, 1970, 441 Pa. 365 (1970).

Applying these principles of law, the intent of testator in the instant case is readily ascertainable from an analysis of all the language in his will and his scheme of distribution. Testator's dominant intent was to benefit his family line to the exclusion of all others. The only situation in which he intended his estate to go out of the family line was the dual, remote contingency: (1) that no issue would survive the last designated measuring life and (2) that his wife would fail to dispose of the remainder through her will.

Rowland's Estate, 141 Pa. 553 (1891), which has been consistently followed, is on point. In that case, testator directed that income from his estate should be distributed to his children and to the issue of any deceased child. The court decided that since testator had left his estate to "two classes, viz., living children of the testator, and living issue of deceased children taking in the right of the parent, per stirpes" when a child died leaving no issue, such child "fell out" of the first class and was not represented in the second and in view of the fact that the deceased child could not claim through either class, his share was distributable to the remaining children or their issue. On page 561, the court concluded that this ". . . is another illustration of the maxim that every will must be construed in the light which its provisions throw upon the intention of the testator."

In the instant case, testator's children were to be benefited as the first class, and the sons' widows and

issue of deceased children as a second class. Hence, when Eugene Howard George and Alice Plumly died without issue, their shares "fell in" to be distributed to the remaining members of the two classes, for they then ceased to have any claim to our testator's estate.

Viewing testator's will as a whole, it is patent that he did not write and execute this detailed and intricate six page will and four codicils with the intention of allowing a portion of his estate to pass by intestacy. Moreover, testator created this trust for the benefit of his immediate family. In this he included his widow, his children, the widows of his sons and the issue of his children. If his issue failed during the life of his wife, he gave her a power to dispose of the remainder. Finally, only in case of failure of issue after his widow's death and her failure to exercise her power to appoint the remainder, he left his estate to the University of Pennsylvania.

Testator obviously attempted and intended to dispose of all the income during the existence of the trust. On the death of each child, income was to go to the issue of that child. Finally, he provided "On the death of any of my children without leaving any child or other issue living at the time of the death of the survivor of my said two grandchildren . . . the share of the . . . [income] . . . which would have been payable to the child so dying, shall be divided, distributed and paid in equal shares to and among my other children who may be living . . . until the time of the distribution of the principal of my estate as above provided." Although marred by a misplaced phrase, this language demonstrates testator's intent. It must be read: "on the death of any of my children" without issue surviving to termination of the trust. True, there is the *awkward* clause: "without leaving any child or other issue living at the time of the death

of the survivor of my said two grandchildren." However, this clause does not set the operative date, which is the death of the child or of surviving issue or the share being disposed of, which is the share of income payable "to the child so dying." It establishes the condition of failure of issue at a time after the death of the child. But where a child leaves no issue or dies, and issue becomes extinct prior to the death of the surviving grandchild, the condition is literally fulfilled. So testator's intent is patent. No additional words are necessary.

Claimants' contention would give the income to strangers, at the expense of members of his bloodline, viz., Maude H. Weaver, a legatee of George Plumly's deceased widow and the Middlesex School, Cambridge, Mass., legatee of Eugenia George's son. Testator specified the University of Pennsylvania as the educational institution he wished to benefit, if any were to take, not the Middlesex School. Nor did he evidence any intent to allow his sons' widows to control the disposition of his estate, or to benefit anyone outside his bloodline.

"It is a well-known rule of construction that a will should be construed, if possible, so that no intestacy will occur": Keffalas Estate, 426 Pa. 432 (1967), and Vandergrift Estate, 406 Pa. 14 (1962). A will should be read, if possible, so as to make it effective. "It is not rules of grammar which are significant, but rather the intent of the testator, and the order of words is immaterial if a different arrangement will best express that intent": Farrington Will, 422 Pa. 164 (1966).

We are fortified in our conclusion by the facts that (1) the position now taken by exceptants has never been advanced before at the audits of the four previous accounts; (2) at the death of Eugene Howard

George, son of testator's child, Eugenia P. George, on December 16, 1959, without issue, trustee's third account was filed, all parties were represented, and no claim of intestacy was made; moreover, pursuant to an agreement between Alice Plumly and Francis Plumly, the income formerly payable to the Eugenia George line was divided between Alice and Francis.

Although this professionally drawn will is cloudy in some spots, owing to the fallibility of lawyers (even such a distinguished one as Theodore F. Jenkins, Esq.), who cannot always envisage or spell out what happens in every possible contingency, the basic intention of testator to keep income and principal of the trust within family lines stands out clearly in the instant will.

Accordingly, the exceptions are dismissed and the account is confirmed absolutely.